H. H. SICKLES, Appellee, v. DALLAS CENTER BANK,
Appellant.

1. **Equity**: ACCOUNTING: PLEADING: EVIDENCE. In an action in
equity for an accounting with defendant, based upon the latter's
possession of certain promissory notes delivered to it as collateral
security for a debt owing it by plaintiff's assignor, the plaintiff
alleged in his petition that, after the payment of defendant's
claim, a large number of notes yet remained in its hands, "which
were valuable," and that, upon demand, defendant had refused to
surrender or account for the same. *Held,* that under a general
denial in the answer, the defendant was entitled to show that the
notes were of no value at any time.

2. ———— : ———— : REOPENING CAUSE FOR ADDITIONAL EVIDENCE. The
reopening of an equity cause, after its submission to the court for
judgment, for the introduction of further testimony to correct an
oversight or mistake, is a matter within the discretion of the trial
court, and, in the absence of any showing of prejudice, its action
will not be disturbed upon appeal.

3. ———— : ———— : DECREE. Under the evidence, *held,* that the plain-
tiff was entitled to a decree requiring defendant to surrender the
notes in controversy, and for costs of suit in the district court.
[GRANGER, J., *dissenting.*]

*Appeal from Dallas District Court.* — HON. J. H.
HENDERSON, Judge.

MONDAY, OCTOBER 27, 1890.

THIS is an action in equity for an accounting for
certain promissory notes, and for judgment for the
amount thereof. There was a trial on the merits, and a
judgment for the plaintiff. The defendant appeals.

*D. W. Woodin,* for appellant.

*Cummins & Wright* and *R. S. Barr,* for appellee.

ROTHROCK, C. J.—I. In March, 1883, one F. Hub-
bard was indebted to the Dallas Center Bank in the
sum of about one thousand and thirty-six
dollars, and the bank held, as collateral
security for said debt, certain promissory

1. EQUITY:
accounting:
pleading:
evidence.

notes on third persons, payable to Hubbard, and pledged by him to the bank as security. At the same time the plaintiff herein, as agent of the Moline Wagon Company, held a claim against said Hubbard, and obtained from him an assignment of the notes held by the bank. This assignment was taken as collateral security for the debt due from Hubbard to the Moline Wagon Company, and it was subject to the rights of the bank as a holder of the collateral. Afterwards, Charlotte Hubbard, the wife of F. Hubbard, deposited certain notes with the bank as additional collateral security for its claim. These notes were to be applied in payment of any balance of the debt which could not be realized from the notes previously assigned to the bank by Hubbard. The notes deposited as collateral by Charlotte Hubbard were afterwards, at the suit of the Grand Detour Plow Company, adjudged to be the property of F. Hubbard, and held by his wife in fraud of his creditors. The debt due to the bank was fully paid in October, 1884, and after such payment the bank still held a part of the notes assigned by Hubbard, and it also held one hundred and seven dollars collected from the notes deposited by Mrs. Hubbard. This last sum of money is not in controversy in this appeal. The Grand Detour Plow Company intervened in the action, and the said sum of one hundred and seven dollars was adjudged to belong to it, and no appeal has been taken from this part of the judgment. The controversy is limited to the correctness of the judgment so far as it applies to the notes assigned by F. Hubbard to the bank. At the time of the trial in the district court, there was, of the notes originally assigned to the bank, an unpaid balance of four hundred and eighty-five dollars and forty-seven cents, for which amount judgment was rendered for the plaintiff.

The defendant, by its original answer, made no claim to the notes, and averred a readiness to deliver them to the person to whom they belonged, and alleged that it had deposited the same with the clerk of the district court. It was averred in the petition that the plaintiff demanded

the notes of the bank, and that the bank refused to deliver the same to plaintiff, and refused to account to the plaintiff in any manner for the notes, and refused to give the plaintiff any statement of what notes had been paid. The only allegation of the value of the notes contained in the petition was as follows: "3. That there were a large number of notes then in the hands of said bank, aggregating some fourteen or fifteen hundred dollars, which were valuable, and were held by said bank as collateral security for certain notes given by said Hubbard to the bank, upon which there was then due less than seven hundred dollars." The prayer of the petition was as follows: "Wherefore plaintiff prays that there be an accounting; that the defendant be required to show the amount of notes originally in its hand as collateral, how many have been paid, the balance in its hands in money or notes; that plaintiff have judgment against the defendant for the amount of notes originally in its hands more than sufficient to pay the claim for which they were held as collateral, with interest and costs, and for such other, further and different relief as to equity and the court shall seem just."

It will thus be seen that the plaintiff averred in the petition that the notes "were valuable," and demanded judgment against defendant for the amount of the notes in its hands over and above what was sufficient to pay the claim of the bank. In addition to the averments of the answer above referred to, there was a general denial of "each and every other allegation in said petition contained." There was no admission of the value of the notes. The cause went to trial, and the main contention between the parties was whether the bank had wrongfully converted the balance of the notes by refusing to account for the same, and by a refusal to deliver them to the plaintiff. The evidence was closed, and the cause submitted to the court. At that stage of the case the evidence showed a wrongful conversion. There can be no question upon that point. There was no bad faith shown by the bank, but it had refused upon

demand to deliver the notes. A conversion may be shown by a wrongful detention. *Cutter v. Fanning*, 2 Iowa, 580. The fact of a conversion may be established by proof of a demand and refusal. 2 Greenl. Ev., sec. 644.

The cause was submitted to the court on the fifth day of December, 1888. At that time the court stated that the plaintiff was entitled to recover the face value of the notes in question, and that the question as to whether the plaintiff was entitled to a judgment for the one hundred and seven dollars claimed by the Grand Detour Plow Company would be taken under advisement. On the next day, the defendant made an application to be permitted to introduce additional evidence relative to the value of the notes. It was shown that the evidence was omitted by oversight and mistake. It was objected by the plaintiff that the motion to reopen the case was filed too late, because it had been finally submitted. The court sustained the motion, and further evidence was taken which shows without conflict that the notes in controversy were of no real value at any time. The order sustaining the motion was as follows: "The motion for the reopening of the case is considered, and the court makes its ruling as a part of the records in this case, in addition to the journal entry. The chronological statement as to the disposition of the case is in the main true,—that it had been submitted to the court, and the court had made its announcement, saving the consideration as to the one question. The showing made of oversight is amply sufficient to warrant the introduction of additional testimony, and the only hesitancy heretofore has been the fact that it has been the opinion of the court that the same was not material to the issue tendered in this case. The case being an equitable action tried to the court, all the matters should be entered of record. The court will permit the examination of the witness Hoops touching the value of the notes under the following terms." [The court then stated certain rules under which the evidence should be given.] We think that

the issue as to the value of the notes was directly made. As we have shown, the petition averred they "were valuable," and the answer by the general denial put that averment of the petition directly in issue.

II. We come now to consider what we regard as the only real question in the case. It is this: Was it within the power of the court, after the cause had been fully submitted, to entertain a motion to reopen the case, or in other words, in effect, to set aside the submission and take additional evidence? It is true the motion did not, in terms, ask that the submission be set aside, but that was just what was done. It was withdrawn, and the case was reopened. Section 2799 of the Code is as follows: "At any time before the cause is finally submitted to the court or jury, either party may be permitted by the court to give further testimony to correct an evident oversight or mistake, but terms may be imposed upon the party obtaining the privilege." If the court below had refused to sustain the application, it is altogether probable that this court would have sustained the ruling as being within the legal discretion of the court. In *Baker v. Jamison*, 73 Iowa, 698, which was an action in equity, the plaintiff moved the court to set aside the submission and permit the introduction of additional evidence. The court overruled the motion, and the ruling was sustained, not on the ground that the court had no power to entertain the motion by reason of the above cited statute, but because no abuse of the sound discretion of the court was shown. In *Eggspieller v. Nockles*, 58 Iowa, 649, which was also an action in equity, after the evidence had been introduced, the cause submitted, and the court announced a decision in favor of the defendant, the attorney for plaintiff asked to be allowed to put the plaintiff on the stand as a witness. The defendant objected, his objection was overruled, the testimony of plaintiff and other testimony was taken, and the court reversed its former decision, and rendered a decree in favor of plaintiff. One ground of the objection was that "the cause had

2. ——: ——:
reopening cause for additional evidence.

been submitted and a decision rendered." This court approved the ruling, saying that "it was within the discretion of the court, under the circumstances of the case, to permit the plaintiff to be called as a witness. No abuse of discretion appears." The case at bar was an equity cause. The taking of additional evidence was not embarrassed by the case having been submitted to a jury. Counsel for both parties were present at every stage of the proceedings, and no prejudice whatever is shown. We think that in furtherance of justice there was no error in permitting the evidence to be introduced. If we should hold there was error, we would overrule the case last above cited, and we do not think that such a result is desirable. It is true the statute contemplates that the additional testimóny should be offered before the cause is finally submitted, but the submission cannot be said to be final if an application be promptly made to set the submission aside, or, what amounts to the same thing, if a timely application be made to correct a mistake or omission by the introduction of additional evidence. Whether it is a final submission may be safely left for the trial court to determine. The court having admitted the evidence, it was within the issue, and should have been considered in fixing the amount of the judgment. As we have said, the record, including the additional evidence, shows that the notes were of no value. It is true that, in an action for the conversion of promissory notes or choses in action, the amount of the notes or other instruments is *prima facie* the measure of damages, but it is competent for the defendant in such case to show the insolvency of the makers of the notes as affecting the measure of recovery, and as showing that they are of no value. *Latham v. Brown*, 16 Iowa, 118; *Callanan v. Brown & Co.*, 31 Iowa, 333; *Sadler v. Bean*, 37 Iowa, 439.

III. The above considerations lead to a reversal of the judgment. However, as the cause is triable anew in this court, and we have full power to mold the decree so that it will protect the

3. ——: ——:
decree.

rights of the parties, it is ordered that the notes in controversy be delivered to the plaintiff to the end that he may, if so advised, attempt to collect them, and, as the defendant was liable to the plaintiff for nominal damages for the conversion of the notes, the judgment for costs in the court below will not be disturbed. The plaintiff will be required to pay the costs of this appeal.

This disposition of the case renders it unnecessary to determine whether an amendment to the answer which was filed after the additional evidence was introduced should have been stricken from the files. The amendment was wholly unnecessary. It presented the question that the notes were of no value. As we have seen, that issue was made by the original answer. Some question is made by counsel for appellee as to whether the record was preserved so as to present the appeal to this court. It appears to us that the objection made by counsel is not well taken. The judgment of the district court is REVERSED.

GRANGER, J. (*dissenting*).—I cannot give my assent to the rule announced in the second division of the majority opinion, because I believe it to be a grave error, and in plain disregard of a provision of the statute. Code, sec. 2799. The ruling reaches beyond the case at bar, and affects the general practice of the state. I differ radically with that opinion as to what constitutes the final submission of a cause. I do not understand the opinion to claim but that, if the cause had been finally submitted before the application to introduce additional testimony, it would have been error to permit it. The opinion says: "It is true the statute contemplates that the additional testimony should be offered before the cause is finally submitted." A legitimate inquiry, then, is, when is a cause finally submitted? I think it is when submitted to a jury or the court for final verdict or judgment; and that had been done in this case, and, so far as this appeal is concerned, the judgment announced. But the majority opinion says: "The submission cannot be said to be

final if an application be promptly made to set it aside.''
Then would there ever be a final submission if such
applications should be promptly made? When the
legislature said the court might permit the taking of
further testimony before final submission, it gave to the
court a discretion in that respect before such submis-
sion, but evidently intended that it should not extend
beyond the submission. But the majority opinion
says: ''Whether it is a final submission may be safely
left for the trial court to determine.'' The rule then is
that such testimony may be taken at any time if the
trial court shall say the cause has not been finally sub-
mitted. It follows that there is no given state of facts
that constitute a final submission within the meaning
of the statute under consideration, and that there is no
limitation upon the right of the court to admit such
evidence. Now in this case, there is no question but
that the parties submitted the case to the court, intend-
ing that it was final, and for the purpose of a final judg-
ment. The record bears unmistakable evidence that
such was the intention, and there is not a word in
record or argument to dispute it. The majority opin-
ion then, in effect, gives the rule that, where parties
intend a final submission, it is not final so as to exclude
additional evidence if the trial court shall otherwise
hold. To read the section should at once suggest the
legislative thought to those familiar with judicial trials.
The submission of a cause follows its presentation to
the court by the introduction of the testimony, and the
arguments as to the law and facts. Before the trial, in
the settlement of issues, and during the trial, upon
motions and questions of evidence, are submissions
known in law as interlocutory, not final, submissions;
and, after the full presentation of the case, comes the
final submission, which is the one contemplated by the
statute in question. The word *final* is not intended to
distinguish the last submission from others intended to
be final, but to distinguish it from other submissions
occurring before the trial is completed; and is that sub-
mission always known and recognized as final. This

view gives to the section effect; the other entirely
defeats it. Omit from the section the words "before
the cause is finally submitted," and you have, in effect,
the rule given in the majority opinion. Rules of con-
struction require that the words shall have a meaning,
if susceptible of it, and these certainly are.

It would seem strange under the statute in ques-
tion, after the verdict of a jury, if the court, upon such
an application, should set aside a verdict or submis-
sion, and permit the taking of further testimony; and
it would be equally as sound an interpretation of the
law as in this case; for the section limits it to a sub-
mission to a "court or jury," and makes no distinction
as to the kind of proceeding, whether equitable or
ordinary, and it is a part of the Code of Civil Practice.
The fact that embarrassment might result could not, in
my judgment, influence the determination or fact of its
being a final submission. The majority opinion cites,
as precedents for its holding, the cases of *Baker v.
Jamison*, and *Eggspieller v. Nockles*. In the first case
cited, the court did not cite the statute as authority for
its holding, but it could have done so with equal pro-
priety; and the case is not authority for any view of
the statute, for it makes no reference to it. The latter
case cited does hold to the rule of the majority opinion
barring one fact, that the holding is not based on the
statute. It is manifestly certain that the holding in
that case, as well as the comments in the case of *Baker
v. Jamison*, were made without the attention of the
court being called to the section in question, and that
the apparent conflict is the result of a mere inadvert-
ence. The court would surely never have attempted a
construction of a statute or based a ruling on it without
a reference to it. Neither opinion has a remote refer-
ence to any statute as a basis for the holding. I do not
consider either case as an authority upon the question,
and I do not think the court should hesitate to follow
the language of the statute, without reference to the
cases cited. The district court seems to have admitted

the evidence alone for precautionary reasons, as the cause was triable anew in this court, and then disregarded it because improper, as I think this court should do, and affirm the judgment.