NATIONAL BANK OF BATTLE CREEK, Appellant, .v. C. H. DEAN *et al.*, Appellees.

1. Promissory Notes: MATURITY: BONA FIDE PURCHASER. Where a mortgage securing a series of notes provided that, in case of default in the payment of the note first falling due, all of said notes should, at the election of the payee, become due and payable, such election by a purchaser of the unmatured notes after default in the payment of the note first falling due, will not relate back to the date of said default so as to make said unmatured notes subject to defenses against the payee, as in the hands of a purchaser after maturity.

2. ———: MORTGAGE: FORECLOSURE: APPLICATION OF PROCEEDS. The proceeds arising from the foreclosure of a chattel mortgage should be applied, where there are several notes thus secured, to the payment of the notes in the order of their maturity.

3. ———: BONA FIDE PURCHASER: EVIDENCE. Where in an action by a bank upon certain promissory notes the testimony of the president and cashier, that the notes were purchased by the bank for value, before maturity, and without knowledge that there was any dispute as to the consideration, or of any defense thereto, was undisputed, and the notes showed the indorsement of the payee, *held*, that the finding of the jury that the bank was not a *bona fide* purchaser for value before maturity, was contrary to the evidence.

*Appeal from Monona District Court.*—HON. G. W. WAKEFIELD, Judge.

TUESDAY, OCTOBER 25, 1892.

THE plaintiff avers, in substance, that on the twentieth day of July, 1889, the defendant, C. H. Dean, made to Nichols, Shepherd & Co., four promissory notes, for three hundred and fifty-two dollars and fifty cents each, due respectively, January 1, 1890, 1891, 1892, and 1893; that the last of the series of notes was signed by both C. H. Dean and Silas Dean; that C.

H. Dean, gave as security for the payment of the notes, a chattel mortgage on a steam threshing machine outfit; that a condition of said mortgage was that, in case of a failure to pay any part of said notes at the time they became due, then, in that case, all of said notes shall be considered due and payable; that there had been a failure to pay the note due January 1, 1890; and that the first of said notes was assigned by Nichols, Shepherd & Co., to the plaintiff before January 1, 1890, and the other three on January 20, 1890, together with the mortgage securing the same. The answer consists of denials that the plaintiff is the owner of notes, that the notes were ever delivered to the plaintiff or to the Nichols–Shepherd Company, and presents a counterclaim, based on the wrongful suing out of an attachment in the case. There was a verdict and judgment for the defendants, from which the plaintiff appeals.—*Reversed.*

*Charles E. Underhill,* for appellant.

*Spalding & Taylor,* for appellees.

GRANGER, J.—I. An important feature of this case is whether or not the plaintiff bank is such a good-faith purchaser of these notes as not to be subject to equities arising at their inception. It is beyond dispute that the first note was transferred, if at all, before its maturity, and was not paid at maturity. It is also beyond dispute that the other three notes were assigned after maturity and default in the payment of the first note, and before the commencement of this suit. Before the commencement of the suit there was no election by the holder to have the last three notes due, because of a failure to pay the first note. The district court instructed the jury that the default in the payment of the first note rendered the other notes due at the time of the default,

1. PROMISSORY notes: maturity: bona fide purchaser.

and that they were subject to such defenses as they would be in the hands of Nichols, Shepherd & Co., and of this the appellant complains.

We do not understand the appellees to contend that the mere fact of default in payment, without election by the holder, would render them due, but that the "option must be declared at the time of the default or as of the time of the default;" that is, the act by which the notes are rendered mature relates back to the time of the default, and hence that the maturity of the latter notes and the default are the same in point of time. No question is made as to the right of the holder to make the election at any time after default, and we do not determine it, but consider the case with that as an uncontroverted question; and, thus considered, we think the election does not relate back to the maturity of the first note, but that the notes mature at the time of the election. The reasons for such a holding are quite manifest. The very fact that the maturity of such a note depends on an election, if before maturity, by its other terms, militates strongly against the thought that when the election is made the note matured months or years before, as the fact might be. The day before the election the note is not due; the day of the election it has been due for months or years. Again, the consequences to result to commercial paper from such a holding are such as to forbid it, in the absence of reasons quite imperative for its support. The giving of the instruction was error.

II. April 8, 1891, the plaintiff received from the sale of mortgaged personal property two hundred and eighty-six dollars and ninety-five cents, and applied the same on the note due January 1, 1891, being the second of the series. The court instructed the jury, as a matter of law, that the payment should be applied on the first note, maturing January 1, 1890. The appel-

2. ——: mortgage: foreclosure: application of proceeds.

lant also complains of this, but we think without rea-
son. The appellant gives considerable attention to the
general rule as to payments wherein the debtor first
has the right to make the application, and second, the
creditor; and, where neither make it, the court will
apply the payment in the interest of justice. We
think the statute is conclusive upon this question. Code,
chapter 4, title 20, is "Of the foreclosure of mortgages,"
and treats of both chattel and real estate mortgages.
Section 3324 provides: "If there is an overplus after
satisfying the mortgage and costs, and if there is no
other lien upon the property, such overplus should be paid
to the mortgagor." By section 3325 it is provided:
"If there are other liens on the property sold, or other
payments secured by the same mortgage, they shall be
paid off in their order." These sections seem to be of
general application in foreclosure proceedings, and we
can see no reason why they are not applicable in this
case. These latter notes are "other payments secured
by the same mortgage," and we think it was the right
of the mortgagee to have the money derived from the
mortgaged property, applied in the payment of the note
due January 1, 1890. In this respect there was no error
in the action of the district court.

III. At the foundation of several complaints in
this record lies the error of the court in holding that
3. ——: bona fide the three notes matured alone by the
purchaser:
evidence. default in payment of the first note, which
ruling opened the door for defenses available against
Nichols, Shepherd & Co., without proof of notice or
*mala fides* on their part. Our holding on that branch
of the case will, we think, avoid on another trial some
of the questions argued.

In the answer it was pleaded that the notes in suit
were never delivered; that they were placed in escrow,
to be delivered only when the threshing machine for
**which they were given should prove satisfactory,**

and be accepted as complying with the warranty; and that they "were taken from escrow without compliance with any of the conditions, and without authority or right, and of all this plaintiff had full knowledge." The jury found specially that the notes were placed in escrow and that they had never been delivered. The district court instructed the jury that if it so found, "then the holder has the burden of showing that he purchased the same before maturity for a valuable consideration, and without knowledge of the wrongful delivery of the escrow." Upon this point the jury also found specially against the plaintiff. The only evidence on this branch of the case that we find, or are referred to, is that of the president and cashier of the bank at the time of the transfer. The notes bear the indorsement of Nichols, Shepherd & Co., and the testimony of the witnesses show that they were taken for value, and without knowledge of any dispute as to the machinery for which they were given, or that any defense was claimed thereto. We must refrain from comments upon the evidence that might prejudice another trial, and we only add that this undisputed testimony seems to have been disregarded by the jury, without anything in the record to impeach or discredit it. If such testimony can not prevail, it would seem impossible for an innocent holder of commercial paper to vindicate his title when he assumes the burden of so doing. The only evidence on this point is for the plaintiff. The finding is against the plaintiff and the evidence. We think the district court should have set aside the verdict and granted a new trial. REVERSED.