## C. H. DEAN v. THE NICHOLS & SHEPARD COMPANY, Appellant.

**Conversion:** PRACTICE. In an action for wrongful conversion of notes executed by plaintiff to defendant on a sale of machinery with a warranty, the contract providing for payment of the notes on delivery of the machine, plaintiff may show that, although the machine was delivered, the notes were given to the defendant's agent under his agreement to hold them until plaintiff was satisfied with the working of the machine; for such action is not founded on breach of the contract of sale.

SAME. So, too, such action, not founded on the contract of sale, is not limited by the provision therein as to the time within which action for the breach of warranty or for damages might be maintained.

MEASURE OF DAMAGES. Damages for wrongful conversion of notes does not include expenses of an unsuccessful defense to an action thereon by defendant's transferee, but merely the value thereof, which, in the absence of other evidence, is the face value thereof.

**Waiver:** WRITTEN NOTICE. Notice in writing that the machine sold does not comply with the warranty, required by the contract to be given the seller, is waived where he acts on an oral notice given his agent.

*Appeal from Monona District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

### TUESDAY, MAY 28, 1895.

Action to recover three thousand five hundred dollars damages for the alleged wrongful conversion of four promissory notes aggregating one thousand four hundred and ten dollars. Verdict and judgment in favor of the plaintiff for two thousand two hundred and ninety-eight dollars and forty cents. Defendant appeals. The issues and facts are sufficiently set forth in the opinion.—*Modified and affirmed.*

*Chas. E. Underhill* and *D. A. Wynkoop* **for** appellant.

*Spaulding, Taylor & Burgess* and *Oliver Bros.* for appellee.

Given, C. J.—I. The errors assigned and argued in the instructions. The following is a sufficient in the instructions. The following is a sufficient statement of the issues and facts for an understanding of the questions discussed: Under date of July 5, 1889, the plaintiff purchased from defendant, through its agent, Will C. Whiting & Co., at Whiting, Iowa, one steam-threshing outfit, with certain specified appliances, upon terms and conditions expressed in a written order signed by plaintiff and his father, Silas Dean. Plaintiff agreed to receive the machine on arrival, "subject to all the conditions of the warranty and agreement printed below, and pay in cash the freight and charges thereon from the factory, and also agree to pay to your order, at the time and place of delivery above named, the further sum of one thousand four hundred and ten dollars, as follows, namely: by four promissory notes secured by mortgage on the machine, and the signature of Silas Dean on the note last falling due." Said written order contains these further agreements and conditions: "This machine is ordered, purchased, and sold subject to the following express warranty and agreement, and none other, viz.: That said separator is well made and of good materials, and with good management is capable of doing a good business in threshing, separating, and cleaning grain and seeds. Also that the said engine is well made, and of good materials, and, if properly run and rightly managed, is capable of driving said

separator to do a good business in threshing.   Condi-
tioned that, upon starting this machinery, the under-
signed purchasers shall intelligently follow the printed
hints, rules, and directions of the manufacturers; and
if, by so doing, they are unable to make it operate well,
written notice stating wherein it fails to satisfy the
warranty is to be immediately given by the under-
signed purchasers to Nichols & Shepard Co., at Battle
Creek, Mich., and also to the dealer through whom pur-
chased, and reasonable time to get to it, and remedy
the defect (if any), unless it is of such a nature that they
can advise by letter; and the purchasers hereby agree
to render necessary and friendly assistance.   But if
the purchasers fail to make it perform, through
improper management, or lack of proper appliances,
or neglect to observe the written directions, then the
purchasers are to pay all necessary expenses.   Defi-
ciencies in the general adaptation of the engine for devel-
oping the rated power, and of the separator for thresh-
ing, separating, and cleaning, are expressly agreed by
the undersigned to be reported in writing, as above
stated, within five days after starting it, and not after
continued use or injury to the machinery.   And it is
expressly agreed that use without such written notice
is conclusive evidence of satisfaction and fulfillment of
all warranty.   It is expressly understood and agreed
that all warranty on this machinery terminates and
expires, and all liability of Nichols & Shepard Co., to
an action for breach of warranty or recoupment for
damages, set-off, or otherwise, ceases entirely at the
close of this year, any statute of limitations to the con-
trary notwithstanding; and all warranties are to be
invalid in case this machinery is not fully settled for
when delivered." The machinery and appliances,
except a zinc riddle and measuring boxes, arrived at
Whiting, and on a Saturday following, after examin-
ing the machinery, plaintiff executed his four promis-

·sory notes to the defendant for three hundred and fifty-two dollars and fifty cents each, payable as agreed. The three first falling due he then delivered to Whiting & Co., and retained the other to procure the signature ·of Silas Dean thereto.    On the Monday following, plaintiff, with the assistance and instructions of an expert, sent by defendant, took the machine out to work.    There is a conflict in the evidence as to whether the machine worked well or not.    On the next Friday plaintiff returned the machine to Whiting & Co., claiming that it did not work as warranted, whereupon Whiting & Co. notified defendant, and another expert, a Mr. Morse, was sent by defendant.    Plaintiff again, with the assistance of Mr. Morse, took the machine out, and tried it, Mr. Morse remaining some time with the machine.    Before leaving, plaintiff gave Mr. Morse a statement in writing to defendant ·concerning the machine, which has been lost. Three witnesses were called as to its contents.    Morse says it was that "both the engine and separator gave good satisfaction, and filled the warranty."    L. E. Christie states as his recollection that it read this way: "I hereby certify that Mr. Morse has fixed the machine bought of the Nichols & Shepard Co., and it fills the warranty made by the company.    It works well; it runs all right, except one bolt, which the company agrees to send."    Will C. Whiting states thus:    "This is to certify that Mr. Morse has come and fixed my ·engine and separator, and that it now works and fills the warranty· as made by the makers.    It is all right ·except one bolt, which is no good.    It is all right :now, but do not know how long it will remain so." ·Plaintiff continued to work the machine for a few days after Mr. Morse left, and again returned it to Whiting :& Co., claiming that it failed to work properly, and

demanded his notes.    A third expert was sent by defendant, but no further test was made.

2    About the time the machine was first returned, Silas Dean signed the note last falling due under the following circumstances, as he states it.    He says he refused to sign the note after he saw how the machine worked.    That plaintiff and Mr. Easton, who had negotiated the sale, came to see him.    That he was told that: "Mr. Whiting says, if the second expert comes, and finds the machine is not settled for, they will throw all the responsibility upon me, and will not touch the machine, and he will have to fix it himself, because the machine was not settled for as he agreed with the other party.    He says, 'if you will sign the note, we will put it in the Whiting Bank, and they will stay there until we are satisfied the machine is all right,'" whereupon he signed it.    The evidence shows without contradiction that when this note was delivered to Whiting & Co., which was before the second trial, Whiting & Co. agreed to and did place the four notes in the Bank of Whiting, to be held until plaintiff was satisfied with the working of the machine.    Mr. Whiting testifies that before the order for the machine was signed he told plaintiff he would not send the notes away until he had his trial, that the company would not ask for them right away, and that he would not send them.    Upon Mr. Morse's presenting the written statement from plaintiff, referred to above, the four notes were delivered to him by the bank with the knowledge of Whiting & Co., but without the knowledge of the plaintiff.    On December 10, 1889, defendant transferred the note falling due January 1, 1890, and on January 20, 1890, the other three notes thereafter to become due, to the National Bank of Battle Creek, Mich., for value.    Said bank subsequently obtained judgment upon said notes in an action against the plaintiff.    86 Iowa, 656.    (53 N. W. Rep. 338).

Plaintiff's cause of action is not very plainly or concisely stated, but the court correctly construed it as an action to recover for the wrongful conversion of his four promissory notes, upon the grounds that there was no consideration for the notes, and that they were never delivered to defendant, but were obtained by fraud and deceit. The defendant admitted the sale of machinery; denied every other allegation; says that plaintiff's action is barred by the contract; that plaintiff received and paid for the machine by executing said notes; that he failed to render friendly assistance, and failed to report, in writing, as required by the contract, that the machine did not give satisfaction as required by the warranty.

II. Plaintiff was permitted to introduce evidence, over defendant's objections, tending to show as follows: That when plaintiff returned the machine the first time he requested Whiting & Co. to notify the defendants that it did not work as warranted and that they did so. There was no error in this, as defendant acted upon that notice by sending Mr. Morse, and thereby waived notice in writing. Plaintiff was permitted to show the agreement under which Silas Dean signed the note last falling due, and the agreement under which it was delivered, and the four notes placed in the bank. Defendant's counsel, treating this as an action upon the contract expressed in said order, and for breach thereof, contend that this evidence was to vary and change the written contract, and to establish a parol warranty. Appellant's complaints throughout are based upon this misunderstanding of the cause of action. As we have said, it is not an action upon, nor for a breach of, the contract, but for a wrongful conversion of the notes. That defendant did take and convert the notes, there is no question, but, whether wrongfully or not depends upon whether the contract had been so performed as to entitle it to

the notes.   Upon this issue the contract, and all that was done under it by the parties, or their agents, within the scope of their authority, was competent evidence.   It may be true that Whiting & Co. had no authority to make any other contract than that expressed in the order, but they had authority to carry that out on behalf of defendant.   Under that contract, plaintiff was to settle and pay for the machine as provided before it was delivered to him.   It may be questioned whether it was ever delivered to him as contemplated by the parties.   Both times the machine was taken out and operated under direction of defendant's experts.   Defendant does not seem to have regarded it as a delivery when they sent the second and third expert, after notice that the machine had been returned.   Be this as it may, it was competent to prove the conditions upon which the notes were placed in and taken from the bank.   The defendant recognized the agreement under which the notes were deposited.   They were never demanded or claimed until the written statement as to the machine was received from the plaintiff.   It seems to us that defendant's right to the notes depended upon the contents of that writing,—a question that was for the jury.   Having in mind that the issue is whether defendant obtained the notes wrongfully, it will be readily seen that there was no error in admitting evidence, nor in the instructions on this branch of the case.   This view also answers defendant's claim that this action is barred by the terms of the contract, limiting plaintiff's right to sue for a breach of the warranty or recoupment of damages to the close of the year 1889.   This is not such an action; therefore not within the limitation.

III.   The court instructed as follows:  "Par. 4. If you find for the plaintiff, then you will separately determine and assess the several items of damages, and

in your verdict enter specially the amounts found on the several matters, respectively, as follows: First. You will compute the amount of the notes you find to have been wrongfully sold, upon which suit is now pending in the supreme court, face value, with interest to this date, and allow the amount in plaintiff's favor. Second. You will find the amount of costs taxed in the suit upon the notes by the National Bank of Battle Creek, and return the same in plaintiff's favor. Third. You will find from the evidence the amount of attorney's fees necessarily incurred by plaintiff in defense of suit upon said notes, both in the district and supreme court, and return said amount in plaintiff's favor. Fourth. You will find and determine from the evidence the necessary expenses incurred by the plaintiff in loss of time and expenses incurred in preparing his defense and defending said suit upon said notes, and return the same in plaintiff's favor. Fifth. You will find from the evidence the amount of costs that may be taxed in the supreme court in the suit upon said notes, and return the amount thereof in plaintiff's favor." The jury returned their verdict as follows: "We, the jury, find for the plaintiff, C. H. Dean, and separately assess items of damages under the fourth paragraph of the charge as follows: Amount of notes wrongfully sold, one thousand five hundred and fifty-eight dollars and five cents; amount of costs taxed in the district court in suit on notes by the National Bank of Battle Creek, one hundred and forty-four dollars; amount of attorney's fees necessarily incurred by plaintiff in defense of suit of said notes, three hundred and sixty-five dollars and thirty-five cents; amount of attorney's fees necessarily incurred by plaintiff in preparing and defending said suit, thirty-five dollars; amount of cost that may be taxed in the supreme court in the suit upon said notes one hundred and ninety-six dollars."

In 3 Parsons Cont. (6th Ed.) 196, the rule is stated thus: "In trover for a bill or notes or other choses in action the measure of damages is, *prima facie,* the value of its face. Insolvency of the parties liable thereon, payment in whole or in part, or any other facts tending directly to reduce its value, may be shown in mitigation of damages." In Sedgwick Dam. (8th Ed.) section 256, it is said: "The value of the bill or note is, *prima facie,* the amount due on the security; defendant being at liberty to reduce that valuation by evidence showing payment, the insolvency of the maker, or any fact tending to invalidate the security. See *Ingalls v. Lord,* 1 Cow. 240; *Latham v. Brown,* 16 Iowa, 118; *Farnham v. Benedict,* 107 N. Y. 159, 13 N. E. Rep. 784." See, also, *Decker v. Matthews,* 12 N. Y. 313, and *Thayer v. Manley,* 73 N. Y. 305. Defendant does not question the rule, but complains that the court refused to allow it to show the worthlessness of the notes. We are not referred to, and do not find, such a refusal. We are not cited to any authority, nor do we conceive of any principle, upon which the plaintiff is entitled to the items of damage specified in the second, third, fourth, and fifth paragraphs of the fourth instruction as quoted above. The plaintiff is entitled to recover the face value of the notes in the absence of evidence that they were of less value, upon the presumption that, being transferred, he has or will voluntarily pay the same. It is because of the transfer that plaintiff cannot relieve himself from liability without payment. We think the court erred in instructing the jury that, if it found for the plaintiff, it should allow said items as damage. Our conclusion is that the judgment of the district court must, for this reason, be reversed, unless the plaintiff will, within forty days, remit the amount of said items, in which event the judgment will be affirmed.—*Modified and affirmed.*