646 GITHENS v. JOHNSON. [195 Iowa

---

C. D. GITHENS et al., Appellees, v. JAMES JOHNSON et al., Appellants.

**BROKERS:** Duties and Liabilities—Fraud and Deceit. A broker must answer to his principal, not only for a fraudulent profit made at the expense of his principal, but also for the commission paid to him by the principal.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

MARCH 6, 1923.

ACTION in tort to recover damages for alleged fraudulent representations and concealment in the sale of plaintiff's farm by defendants acting as agents. Trial to a jury with verdict for the plaintiffs. Judgment entered accordingly. Defendants appeal.—*Affirmed.*

*Roberts & Webber* and *Frank Roberts,* for appellants.

*Jaques, Tisdale & Jaques* and *Work, Lewis & Work,* for appellees.

DE GRAFF, J.—This is an action to recover damages predicated on the fraudulent acts of the defendants as agents of the plaintiffs in the sale of plaintiffs' farm. There is no substantial conflict in the testimony. It appears that the plaintiffs owned a farm of 142 acres in Wapello County, Iowa. The defendant Johnson was authorized to sell the farm and "was to get the best price he could, but not less than $110 per acre." Later Johnson associated with him as a realtor the defendant Baker.

On the morning of August 8, 1919 Johnson and Baker met C. W. and F. W. Peterson on the road near the farm in question. The Petersons were brothers and responsible farmers living in that neighborhood. They were acquainted with the farm of plaintiffs. The defendants priced the farm to the Petersons at $115 per acre. As a result of the conversation and after some figuring C. W. Peterson said that he thought $15,000 would buy the farm. Johnson replied: "Yes, that sum would buy it if they would take it that day."

It being necessary for C. W. Peterson to visit Ottumwa he made an appointment to meet the defendants at 4 o'clock that afternoon stating that he wanted to look at the farm again before giving a final answer. About 11 o'clock F. W. Peterson went to the defendant Baker's home and told him he would take a chance at the farm provided his brother was willing, and agreed to meet Baker at the home of C. W. Peterson that afternoon between 4 and 5 o'clock.

In the afternoon of the same day one C. A. Swanson made the defendants an offer of $90 per acre for the farm, and to convey this offer to plaintiffs the defendant Baker accompanied Swanson to Ottumwa, and there met plaintiff Githens in the early afternoon. Baker stated to Githens that he was the partner of Johnson who had sent him down with a prospective purchaser for his farm. Githens testified that Baker said: "There was no chance of selling it,—it was a bad farm,—and ran it down, and said there was no use to take anybody out there; that it was a bad farm, and no use talking."

Upon inquiry as to what the purchaser would give for the farm Baker said: "Well, he won't give you more than $90 an acre." Githens indicated that he would not consider the proposition and Baker then stated to Githens that: "He [Swanson]

was the only prospect that he had, and he thought we had better let loose of it; it was a bad farm. Finally he said he might get this man to give $5 an acre more, if I would consider.''

Githens and Baker then went to see plaintiff Ruhe who was confined to his home by sickness, and the conversations previously had were substantially repeated. During these conversations nothing was said by Baker about the Petersons nor about the arrangements to meet the Petersons at 4 o'clock that afternoon. It was reported a little later to the plaintiffs by Baker that: ''He had got his man to raise the offer to $95 per acre, and he thought the plaintiffs ought to accept it, and advised them so to do.'' It was then agreed that Githens and Baker should go down and talk over the matter with the president of the Iowa National Bank at Ottumwa. After this Githens decided to accept the proposition and the contract was drawn and signed by Githens. Baker left the bank between 2 and 3 o'clock saying that he had an appointment to keep, but not disclosing what it was. Githens and the purchaser Swanson then went to Ruhe's house to secure his signature.

At 4 o'clock the defendant Johnson met C. W. Peterson upon the return of the latter from Ottumwa and took him to plaintiffs' farm. A little later Baker and Johnson and the Peterson brothers met at the home of C. W. Peterson as had been agreed. At this time and place and without any dickering the Petersons bought the farm for $15,000, paying $100 down and signing a memorandum of agreement. The Petersons thought they were buying the farm from the plaintiffs. When they learned the next day that Swanson had bought the farm the Petersons objected to dealing with Swanson and insisted on buying the farm from the plaintiffs.

On the day following the sales the defendants came to Ottumwa, and in an interview with Githens asked him to keep quiet and to tell the Petersons that the plaintiffs had sold the farm for $15,000. Githens testified that he believed the things that defendant Baker told him, and had he known the Petersons were considering the purchase and had had an appointment to meet the defendants at 4 o'clock the same afternoon he would not have sold the farm to Swanson at $95 an acre. Both con-

tracts for the sale of plaintiffs' farm appear to have been signed about 5 o'clock on the same day.

Upon this state of facts plaintiffs predicate fraudulent concealment and fraudulent representations and seek to recover the difference between $15,000, the amount paid by the Petersons, and $13,490 received by plaintiffs from Swanson, together with the real estate commission paid by plaintiffs to defendants in the sum of $271.21. Does the evidence sustain plaintiffs' case and establish the essential elements for recovery in an action on deceit?

It is elementary that an agent must be loyal in transacting the business of his principal. An agent is under the legal duty to fairly and fully disclose all facts within his knowledge germane to the subject-matter of the agency, and in the strictest good faith impart to his principal all information that would control, or have a tendency to influence the conduct of the principal. It is his duty to secure the highest price possible. It is his duty to inform his principal as to the true value of the land and to communicate any offers made therefor. He occupies a position of confidence, and must bear true allegiance to his principal. The principal has a right to rely on the statements of the agent in relation to the subject-matter of the agency. The agent must make a full, fair, and prompt disclosure of all the circumstances affecting the principal's rights or interests. These propositions do not require the citation of authority, but see, *Haswell v. Standring*, 152 Iowa 291; *Bracken v. Jackson*, 159 Iowa 424; *Stoner v. Weiser*, 24 Iowa 434; *Hewitt & Hosier v. Lichty Mfg. Co.* 147 Iowa 270. Whether the agent obtains an additional profit by the transaction is immaterial. The recovery of damage by the principal through the fraud of the agent is not dependent on whether the agent gains anything thereby.

The evidence fairly discloses, and the jury so found, that the defendant agents after receiving instructions to sell the farm at not less than a certain price, learned that other and more advantageous terms could possibly be obtained. It was their plain duty, both in law and morals, to communicate this fact to their principal that he might act advisedly in the matter. *Holmes v. Cathcart*, 88 Minn. 213 (92 N. W. 956).

We conclude that the facts fully sustain the finding of the

jury. The court instructed correctly on the measure of damages. The deceit and concealment upon which plaintiffs base their right to recover constituted the inducement for plaintiffs to sell the farm to Swanson at $95 per acre and to enter into an enforcible contract to Swanson to convey title. The Peterson bargain at $15,000, but for the concealment and fraud alleged, was plaintiffs' bargain. The jury under proper instructions of the court found and determined that when plaintiff sold to Swanson the Petersons were able, ready and willing to take the farm at $15,000. The two sales were in effect one continuous transaction, and were it not for the fraudulent representations and concealment of material facts there would have been but one contract of sale. The consequent damage to plaintiff was the direct and proximate result of the maneuvering and machinations of the defendants which they must have intended and contemplated. The jury so found and the evidence supports the finding.

When a real estate agent is employed to sell property and he understates to the principal the best price or arrangement obtainable, the principal is entitled to recover from him the difference between that obtained and that which might have been obtained. Walker on the Law of Real Estate Agency (1st Ed.), Sections 412, 412a. Plaintiffs are also entitled to recover the commission paid when fraud is practiced. *Bracken v. Jackson,* supra.

We will not extend the opinion further. The case was tried on the theory of fraud and deceit. The instructions of the court are also predicated on this theory. The allegations as to contract contained in plaintiffs' petition were mere matters of inducement and narration. It was not necessary for defendants to enter into a contract to faithfully perform their duties as agents in order for plaintiffs to predicate their action for damages for the failure to so perform. The defendants were agents, not middlemen who simply undertake to bring parties together and who owe no duty for negotiating for either. *Stapp & Hendrick v. Godfrey,* 158 Iowa 376. The defendants were authorized to negotiate a sale and did act as the agents of the plaintiffs in effecting the sale.

Prejudice is claimed by appellants based on the alleged mis-

conduct of one of the attorneys for appellees and also on the action of the trial judge in suggesting to both sides the advisability of settling the case. These matters are presented to this court by affidavits. We discover no reversible error in the matter of the alleged prejudice. What is claimed to have been said by the attorney for appellee is not preserved in the reporter's notes or by bill of exceptions. The trial judge acted impartially and clearly no prejudice resulted. The judgment entered is—
*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.