VERA MCCUNE, appellee, v. EMERY MUENICH, HALLETT CONSTRUCTION COMPANY et al., appellants.

No. 50868.

(Reported in 124 N.W.2d 130)

OCTOBER 15, 1963.

Paul W. Deck, of Sioux City, and Leonard & Branco, of Holstein, for appellants.

Hutchison, Hurst & Duggan, of Sioux City, for appellee.

MOORE, J.—On May 25, 1961, an intersection collision occurred between an automobile owned and driven by defendant, Bertram Byron Leonard, and a truck owned by defendant Hallett Construction Company and driven by its employee, defend-

ant Emery Muenich. The truck, loaded with fourteen tons of gravel, then left the highway, struck plaintiff's cement block locker plant, proceeded almost entirely through the building and caused considerable property damage and personal injury. Plaintiff's claim was tried to the court after all defendants waived a jury and admitted liability. They stipulated the trial court should hear and determine the measure of plaintiff's damages. The court found plaintiff was entitled to recover for damages to building $6774; to her personal property $1232; to customers' meat $340; to plaintiff's meat and food products $945; for her personal injury, pain, discomfort and medical expense $500; for loss of earnings and profit $900, and entered judgment for the total of $10,691. Defendants have appealed.

The sole question involved here is whether the award for damages to plaintiff's building is supported by substantial evidence.

I. This law action in which a jury was waived and trial was had to the court is not triable de novo on appeal. In accord with our uniform decisions and rule 334, Rules of Civil Procedure, it is reviewed on errors assigned. The findings of fact by the trial court have the effect of a special verdict and are equivalent to the verdict of a jury. If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Our question is whether the trial court's finding is supported by substantial evidence, and we will not weigh the evidence or the credibility of the witnesses. Davis v. Knight, 239 Iowa 1338, 1340, 1341, 1352, 35 N.W.2d 23–25; Staley v. Fazel Bros. Co., 247 Iowa 644, 648, 75 N.W.2d 253, 255; Morf v. Washburn, 250 Iowa 759, 762, 94 N.W.2d 756, 758; Wunschel v. McKinney, 251 Iowa 881, 882, 103 N.W.2d 81, 82. See also rule 344(f)1. Further, the evidence will be construed in the light most favorable to the trial court's judgment. Staley v. Fazel Bros. Co., supra, and citations.

Plaintiff testified the building, erected in 1955, was a 30x30-foot steel reinforced cement block building in good repair just prior to the accident. It was divided into properly equipped rooms for cooling, sharp-freeze, killing and cutting. On the east side was another building 8x10 feet which housed three com-

pressors, three motors and cooling equipment. During the summer of 1960 plaintiff had installed a meat case with compressors and deepfreeze at a cost of $750.

She testified the truck struck the building near the front door, took out the front steps, completely demolished the front of the structure and continued in and through the building until its front end reached a point about four feet outside the northeast corner of the building. The small building at the northeast corner of the plant, the three compressors, compressor units and motors were completely demolished. Part of the east wall was torn out. The remainder was cracked as were the west and south walls of the building. The roof was broken in the middle and shoved back eight or nine inches. All flashings were torn loose from the blocks. One partition in the salesroom was completely torn out; another was broken by flying blocks. The walls and seals of both the sharp-freeze and cooler room were broken open. About half of the load of gravel was dumped inside the plant.

As owner plaintiff expressed the opinion the reasonable value of the building was $11,000 immediately before and $500 after the accident. We need not set out her testimony regarding loss of meat kept for sale and other items of damage. They are not here in controversy.

Ray Carroll testified for plaintiff he had been employed by Haubrich Construction Company as an estimater 15 years and had been in the construction business 25 years; that it would cost $11,942 to put plaintiff's plant in the same condition it was in prior to the accident. He stated a new building with like equipment would cost approximately $20,000. On cross-examination he stated his estimate included new materials for partitions, the equipment was to be replaced with new equipment, he had not considered any depreciation on any equipment, and that all equipment and wiring would run about $6000.

The written estimate of Ericssons, Masonry Contractors, was offered by plaintiff and received without objection. It set the cost of repairing only the building at $3408. The estimate expressly excluded any electrical, plumbing, heating and cooling equipment.

A. C. Dohrmann, a graduate architect and experienced contractor, testified for defendants. Part of his testimony is:

"I have an opinion as to what it would cost to put the building back in its original state prior to the accident. It is as follows: Demolition structure, repairs and replacement, $2979.61; freezers, mechanical equipment $1526; resurface freezer walls, and I put into parenthesis 'before', it was needed before the accident, was $640.59; new meat case and compressors $1628, making a total of $6774.20. In this I have included $640.59 for resurfacing freezer walls which I felt was needed before the accident. In comparing Exhibit 25, the estimate prepared by Ericssons, Masonry Contractors, and the estimate made by myself, the Ericssons' estimate includes the cost of temporary repairs made to the building. My estimate had been made after the temporary repair work had already been done, and in my estimate we would be using that temporary repair. The Ericssons' estimate is a good estimate, sum of $3408."

Part of his testimony on cross-examination is:

"I did not see the cooling equipment that was in the building. I did not see the motors and compressors. I do not have any idea what those original motors and compressors were. All we do is estimate them as new. We weren't particularly interested in the original equipment. We made an estimate based upon capacity for the size of the deepfreeze and cooler. We didn't see the compressor, the coils were there, we called the refrigeration engineering, I am not an engineer for that type of equipment, but the people that we talked to, we had the size of the cooler and the size of the sharp-freeze. On that we based a capacity of the new compressors and had we been called on to put them in, the new compressors would have amply served the cooler and the sharp-freeze. So that when I made that estimate and we were going to put the building back in its original condition, we didn't know what the original condition was, but I will say this that it would have been 80% better than the old condition. I hadn't seen the building before the accident. I had no knowledge of the condition of the walls, the foundation, the roof, or the cooling equipment or the small building on the east side prior to the accident. I knew nothing about it, didn't even

know where it was. I believe that the temporary repairs made were well done. I didn't know whether the temporary repair was tied into the roof. We were going to tie it in. * * * The estimate of $6774.20 included a figure of $1600 for motors and compressors and that included the cost of installation of these motors and compressors. Refrigeration Engineering Company made that estimate for me, and it included the cost of wiring those into position. We are willing to do the job for that price."

A banker real-estate agent gave an opinion the building was worth $2000 before the accident and $1000 afterward. He had made only casual observations from the exterior of the building. Another real-estate agent testified the value of the building before the accident was $3400 and gave no opinion as to value thereafter.

II. Defendants argue that since the trial court's award is only 20¢ less than the estimate of their witness Dohrmann the court adopted his testimony and thereby committed error because his estimate included new equipment; also because he said on cross-examination the property would be eighty percent better after repair. We do not agree with defendants' contention. On direct examination he stated it would cost $6774.20 to put plaintiff's building back in its original state prior to the accident. Other evidence in the record supports the trial court's findings. In Fredrickson v. Heline, 252 Iowa 92, 94, 106 N.W.2d 74, 76, we said, "It will not avail the defendants to rely upon evidence in the record favorable to them if there is other evidence which fairly supports the verdict and judgment rendered in the trial court." The testimony of Carroll amply supports the finding.

III. It is well settled the trier of facts is not absolutely bound by testimony of experts upon values, even when undisputed, but may use his own knowledge and judgment in connection with the testimony. Kellerhals v. Kallenberger, 251 Iowa 974, 982, 103 N.W.2d 691, 696; Larew v. Iowa State Highway Commission, 254 Iowa 1089, 1093, 120 N.W.2d 462, 464, and citations. In Iowa Development Co. v. Iowa State Highway Comm., 255 Iowa 292, 300, 122 N.W.2d 323, 328, we said: "So the court here was not bound to follow the testimony of any of

the experts as conclusive, but could equate their opinions not only as to the different valuations given by the several witnesses but with the other evidence in the case." From the record we believe the trial court did that here.

IV. Defendants also argue the award for damages to the building is not supported by substantial evidence because of some uncertainty of damages to the separate cooling units. We find no merit in this contention. The parties considered these units as part of the real property and submitted proof of reasonable cost of restoration as a whole. In discussing the applicable rules for considering damages to real property in Grell v. Lumsden, 206 Iowa 166, 169, 220 N.W. 123, 125, we said:

"Rules for the admeasurement of damages are not always easy of identification or application. Regard must always be had to the basic principle upon which damages are allowed: namely, compensation for the injury suffered. * * *

"Where the character of the injury is such that the premises may be reasonably restored to as good condition as they were before, the measure of recovery is the fair and reasonable cost and expense of such restoration."

See also Watson v. Mississippi River Power Co., 174 Iowa 23, 38, 156 N.W. 188, 194, L. R. A. 1916D 101.

We find no merit in the appeal.—Affirmed.

All JUSTICES concur.