A. G. JONES and MARGARET A. JONES, appellees, v. ROBERT L.
SEARS, d/b/a SEARS PROPERTY BROKERS, appellant.

No. 51917.

(Reported in 140 N.W.2d 854)

March 8, 1966.

Ralph L. Powers and Russell Jordan, both of Des Moines, for appellant.

Raymond Rosenberg, of Des Moines, for appellees.

Mason, J.—Plaintiffs' action at law, based upon fraud and breach of fiduciary relationship by defendant in the sale of certain real estate owned by plaintiffs, seeks actual and punitive damages. Trial to jury resulted in a verdict against defendant for $1700 actual and $2500 punitive damages.

Defendant's motions for judgment notwithstanding the verdict and for a new trial being overruled, he appeals.

I. Sometime previous to November 5, 1959, plaintiff A. G. Jones, owner of an apartment building encumbered by a mortgage of $14,988.09 to Des Moines Savings & Loan Association and two home improvement loans of $4033 and $1072, listed it for sale with defendant, a licensed real-estate broker doing business as Sears Property Brokers. Associated with defendant in this business were his son, David Sears, and his son-in-law, Stanley Ritchie.

On January 5, 1960, defendant presented an offer to plaintiffs from Gabriel Nasr of $27,200 whereby plaintiffs would be receiving $4000 cash, Nasr's assumption of the mortgage and home improvement loans, payment of certain taxes and a second mortgage of $3100 on property at 708 Hickman, Des Moines.

The presentment of this offer and its acceptance by plaintiffs give rise to this lawsuit.

II. It is plaintiffs' contention defendant, by accepting the listing of their property, undertook to act as their agent for the purpose of selling it upon terms and conditions most favorable to and acceptable by plaintiffs, by reason of this arrangement defendant stood in a fiduciary relationship to plaintiffs and owed them the duty to act accordingly. They further allege that when defendant presented the offer of $27,200 to them, which they accepted, he fraudulently concealed from them he had a purchaser willing to buy the real estate on contract, not cash; for $32,500, defendant fraudulently and in violation of his agency arranged a series of transactions for the purpose of collecting commissions, all of which was not made known to plaintiffs, they were deceived and defendant failed to advise them of the persons with whom he was negotiating, including members of defendant's family, defendant deceived and misrepresented the value of plaintiffs' real estate and plaintiffs, relying thereon, suffered damages.

Defendant alleges plaintiffs were fully and completely advised of the entire transaction, the property could not have been sold except through multiple transactions, plaintiffs cooperated in the multiple transactions, no information was at anytime withheld from them, a full disclosure was made to plaintiffs by defendant before final consummation, plaintiffs suffered no damage, but in fact received profit on the real estate from the sale made by defendant.

III. On November 5, 1959, defendant procured an offer from Carl J. Tussing to buy plaintiffs' property for $25,000 with $5000 down, balance payable in monthly installments of $200 commencing January 2, 1960, deferred balance to bear interest at six percent. Plaintiffs rejected this offer and at defendant's suggestion made a counteroffer to sell for $27,950 with $8000 down and balance payable in monthly installments of $250 each with deferred balance to bear interest at six and one-half percent. Tussing rejected this offer.

While defendant had plaintiffs' property listed for sale, he was also negotiating a sale of two parcels of property at 700 and

708 Hickman, between William and Beulah Woodford as sellers and Gabriel Nasr as buyer. December 9, 1959, these parties entered into a written offer to buy contingent upon Nasr obtaining financing.

Before presenting Nasr's offer of January 5 to plaintiffs, defendant had arranged a series of sales whereby his son David was to acquire 708 Hickman as his residence and 700 Hickman as trustee for Combined Investors of Des Moines, Ritchie was to acquire plaintiffs' apartment building on contract and Tussing was to purchase Nasr's interest in such contract.

On December 31, 1959, defendant procured an offer to buy plaintiffs' property signed by Nasr as owner and Ritchie as purchaser. This sale on contract for $32,500 with $2000 down payment being made as an allowance for commission due defendant, and balance of purchase price to be paid in monthly installments of $235 commencing March 1, 1960, was entered into some five or six days before defendant presented Nasr's offer of $27,200 to plaintiffs.

All transactions were closed on January 30, 1960. The Woodfords conveyed the property at 708 Hickman to Nasr by deed and sold him the property at 700 Hickman on contract. Nasr retained the contract on 700 Hickman and sold the 708 Hickman property on contract to David Sears as trustee.

An hour or two after Nasr acquired plaintiffs' property he sold it on contract to Carl J. Tussing subject to Nasr's prior contract on this property to Ritchie, and received $9000 cash over and above the liens on the property, realizing approximately $2000 in excess of what he paid plaintiffs for the property. Nasr obtained the $4000 to make the down payment on the contract with plaintiffs from the cash down payment he received from Tussing on the latter's purchase of plaintiffs' property from Nasr.

It is interesting to note from this multiple transaction defendant received $11,030 in commissions from the various sales detailed.

Defendant's motion for a directed verdict at the close of all evidence was overruled and the matter was properly submitted to the jury.

IV. Defendant asserts four errors relied upon for reversal. Three, however, can be combined as they contend that by reason of plaintiffs' failure of proof of the value of the Nasr-Ritchie contract conveying the Jones apartment building, there was no evidence which would warrant a jury finding plaintiffs had been damaged and the court erred in submitting a measure of damages not established by the evidence.

As we understand defendant's position, he does not contend submitting the question of damages to the jury was error. If plaintiffs established fraud on defendant's part in the transaction, they would be entitled to a return of the commission paid. Githens v. Johnson, 195 Iowa 646, 650, 192 N.W. 270, 272. Whether the agent obtains an additional profit by the transaction is immaterial. The recovery of damage by the principal through the fraud of the agent is not dependent on whether the agent gains anything thereby. Githens v. Johnson, supra.

The basis for defendant's contention is the fact the trial court told the jury in instruction eight, "* * * The elements of plaintiffs' recovery, if you find them entitled to recover, would be: (a) the difference between the sale price of $27,200 and the then value of the real-estate contract between Nasr and Ritchie and in no event would this amount exceed the sum of $5300 * * *", when plaintiffs offered no testimony as to the then value of the Nasr-Ritchie contract on January 30, 1960.

Defendant directed the court's attention to this complaint in his motion for a directed verdict made at the close of plaintiffs' testimony, in his motion for directed verdict made at the conclusion of all testimony, by excepting to instruction 8a, and again in his motion for judgment notwithstanding the verdict and motion for new trial.

The trial court's submission of the case and the giving of instruction eight were proper.

The contract showed on its face a consideration of $32,500. It called for payment of that amount by a person other than defendant. Such stated consideration or face value is prima facie evidence of actual value of the contract at date of execution. However, such stated consideration or face value is not conclusive of the actual value of the contract in all cases and does not

prohibit introduction of other evidence tending to prove the value is more or less than it purports to be, such as insolvency of the party liable thereon, payment in whole or in part, or any other facts tending directly to reduce its value. Dean v. Nichols & Shepard Co., 95 Iowa 89, 63 N.W. 582, 584; Peninsular Bank of Detroit v. Citizens' Natl. Bank of Knoxville, 186 Iowa 418, 172 N.W. 293, 295, 19 A. L. R. 547; Hubbard v. State Life Ins. Co. of Indianapolis, Ind., 129 Iowa 13, 105 N.W. 332, 333; Freeman v. Strobehn, 122 Iowa 157, 97 N.W. 1094, 1095; Sickles v. Dallas County Bank, 81 Iowa 408, 46 N.W. 1089, 1091; First State Bank of Hobart v. Montoney, 106 Ind. App. 61, 17 N.E.2d 870, 873; 18 Am. Jur.2d, Conversion, section 113. See annotation in 85 A. L. R.2d 1349; 89 C. J. S., Trover and Conversion, sections 194 and 195.

V. Defendant offered the testimony of Donald Payne, vice-president of United Federal Savings and Loan Association, Des Moines, as an expert that the contract would have a fair market value in Des Moines of $24,000 to $25,000.

It is well settled the trier of facts is not absolutely bound by testimony of experts upon value, even though undisputed, but may use his own knowledge and judgment in connection with the testimony. McCune v. Muenich, 255 Iowa 755, 760, 124 N.W.2d 130, 133, and citations.

Defendant's contention Payne's testimony was the only evidence before the jury as to value of the contract cannot be sustained.

VI. Defendant asserts as his remaining assignment of error plaintiffs' requirement, that all mortgages and home improvement loans be assumed and balance of the purchase price be paid in cash, amounted to a refusal to sell upon the terms of the Nasr-Ritchie contract. This would be proper jury argument and undoubtedly counsel used it in such manner, however, an examination of the record fails to reveal where this contention was urged in the trial court. The rule is well established that a party is not entitled to urge a contention raised for the first time in this court. Associates Discount Corp. v. Held, 255 Iowa 680, 684, 123 N.W.2d 869, 871. Accordingly, we decline to consider this contention.

■ VII. Having determined that there was competent evidence before the jury as to value of the Nasr-Ritchie contract on January 30, 1960, to sustain the verdict, and finding no other error, the case must be and is hereby affirmed.—Affirmed.

All JUSTICES concur.