# IN THE COURT OF APPEALS OF IOWA

No. 14-0898
Filed July 9, 2015

**ALICE M. SHEA,**
Plaintiff-Appellant,

**vs.**

**THERESA LORENZ and MARK LORENZ,**
Defendants-Appellees/Cross-Appellants,

and

**KRISTIN OSTRANDER, VALERIE BISANZ, THOMAS
LORENZ, HEIDI LORENZ, ROB E. DICKINSON
and R.E. DICKINSON INVESTMENT ADVISORS, LLC,**
Defendants-Appellees.
_____

Appeal from the Iowa District Court for Pottawattamie County, James M.

Richardson, Judge.

Both sides appeal the district court's decision in this action over the

transfer of assets from a decedent's estate. **AFFIRMED IN PART, REVERSED**

**IN PART, AND REMANDED.**

John Werner of John Werner, P.L.C., Toledo, and Gary J. Shea of Gary J.

Shea Law Offices, Cedar Rapids, for appellant.

David J. Skalka of Croker, Huck, Kasher, DeWitt, Anderson &

Gonderinger, L.L.C., Omaha, Nebraska, for cross-appellant Theresa Lorenz and

appellees Kristin Ostrander, Valerie Bisanz, Thomas Lorenz, and Heidi Lorenz.

A.W. Tauke of Stuart Tinley Law Firm L.L.P., Council Bluffs, for appellees Dickinson and R.E. Dickinson Investment Advisors, L.L.C.

Brett Ryan of Watson & Ryan, P.L.C., Council Bluffs, for cross-appellant Mark Lorenz.

Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

Alice Shea appeals, and Theresa Lorenz and Mark Lorenz cross-appeal, the district court's decision following a bench trial that involved the transfer of certain investment accounts owned by William (Bill) Lorenz before his death. Bill was ordered to pay his former spouse, Alice, traditional alimony in the amount of $2000 per month until her death or remarriage. This alimony obligation was ordered to be a lien against Bill's estate. However, Bill changed the beneficiary designation of the investment accounts to his children, which resulted in the investment accounts passing outside the estate, depriving Alice of these funds to satisfy the alimony obligation. When Bill's estate became insufficient to satisfy Alice's claim for alimony, Alice sued Bill's children and Bill's financial advisor, seeking satisfaction of her alimony claim.

The district court granted summary judgment to Bill's financial planner and allowed the remaining claims to proceed to a bench trial. The court found Theresa, Bill's daughter and his agent under his general power of attorney, liable for the fraudulently transferred funds and established a constructive trust to pay Alice's alimony funded by all probate and nonprobate property Theresa received from Bill. The claims against all of Bill's other children were dismissed.

Alice appeals the district court's decision to grant summary judgment to the financial planner, claiming there were disputed material facts that made her claim not ripe for summary judgment. Alice also appeals the district court's decision to dismiss all other defendants and enter judgment only against Theresa, claiming everyone who received funds from the accounts that were

fraudulently transferred should be liable up to the full amount of the funds received. In addition, Alice claims Theresa should be responsible for the full amount of the alimony claim because of Theresa's role in the fraudulent transfer. Finally, Alice asserts she is entitled to punitive damages from Theresa and should be awarded attorney fees under common law.

In her cross-appeal, Theresa first maintains that the district court should have granted her motion to dismiss, which alleged the court lacked subject matter jurisdiction, the case was precluded by res judicata, the case was barred by the one-year Nebraska statute of limitations, and the claims made by Alice were not ripe. Theresa also attacks a number of the district court's factual findings and claims no constructive trust should have been imposed. Finally, she asserts the court should not have permitted expert testimony from Bruce Willey.

In his cross-appeal, Mark, Theresa's brother and one of Bill's children dismissed by the district court, claims the district court's decision finding a fraudulent transfer and unjust enrichment was in error, as was its decision to impose a constructive trust. He also claims the court should have made the judgment against Theresa to only include the funds in the investment accounts Theresa received from Bill.[1] Finally, he claims the court abused its discretion

---

[1] First, while Mark challenges what he calls the district court's finding of unjust enrichment, we note the district court did not reach a decision on Alice's unjust enrichment claim. Secondly, we decline to address the first three claims made by Mark as he was a prevailing party as to these issues at the district court. The district court dismissed all of Alice's claims against Bill's children except Theresa. Mark prevailed, and he therefore has no injury with respect to these first three claims. While Mark can certainly defend the district court's decision rendered in his favor, he is not entitled to challenge the district court's decision rendered against Theresa. *See Ackerman v. Lauver*, 242 N.W.2d 342, 347 (Iowa 1976) (noting a party cannot appeal a judgment

when it failed to sanction Alice's attorney pursuant to Iowa Rule of Civil Procedure 1.413 and Iowa Code section 619.19 (2011).

## I. Background Facts and Proceedings.

Alice and Bill were married in 1988, but their marriage became strained, and in 2005, Bill filed for dissolution. During the dissolution proceeding, Bill signed a general power of attorney for business affairs appointing his daughter, Theresa, as his attorney-in-fact. The power of attorney became effective upon Bill's doctor's certification that he had a physical or mental incapacity that rendered him unable to conduct and manage his business affairs. Bill's doctor signed this certification in June 2006 during the dissolution proceeding.[2] Theresa actively participated in the dissolution proceeding on behalf of her father, including signing documents such as Bill's affidavit of financial status and writing checks from Bill's accounts.

During the dissolution proceeding, it was discovered that Bill had certain investment accounts that named his children as beneficiaries. This was in contravention to the couple's prenuptial agreement. So, on August 23, 2006, both Theresa and Bill signed a beneficiary change form, naming a trust established in Bill's will the beneficiary of the accounts. Bill's attorney, Allison

---

rendered between two other litigants). The only issue Mark is able to raise in his cross-appeal is the district court's rejection of his motion for sanctions against Alice, as that is the only issue he lost, and we will address that claim later in this opinion. *See Wassom v. Sac Cnty. Fair Ass'n*, 313 N.W.2d 548, 550 (Iowa 1981) ("A party may appeal only from an adverse judgment. A familiar and long-established rule prohibits any appeal from a finding or conclusion of law not prejudicial, no matter how erroneous, unless the judgment itself is adverse.").

[2] Theresa testified that her father was getting overwhelmed by the dissolution proceedings and was suffering from dementia.

Heffern, informed Alice's dissolution attorney that the change had been made to be in compliance with the couple's prenuptial agreement, but she also advised Alice's counsel that, in her opinion, after the dissolution decree was entered the prenuptial agreement would no longer be binding on the parties.

The court issued the dissolution decree on November 22, 2006, concluding among other things that Bill owed Alice a property equalization payment of $113,761 and Alice was entitled to alimony in the amount of $2000 per month for the rest of her life or until she remarries. The decree provided that Bill's alimony obligation survived his death and would be a lien against his estate.

Following the dissolution proceeding, the beneficiary designation of the investment accounts was changed back to Bill's children. Bill alone signed the beneficiary change forms on June 6, 2007, despite the fact the power of attorney was still in place. This change made the accounts payable to Bill's children upon his death, without first passing through his estate.

Alimony payments were consistently made to Alice until Bill's death on February 20, 2010. Thereafter, Theresa, as Bill's personal representative under the Nebraska probate estate, continued to make the alimony payments out of the assets in Bill's estate. However, because of the insufficiency of the assets, the alimony payments ceased after February 1, 2013, and no further payments have been made.

Alice sued all of Bill's children, as beneficiaries of the accounts, along with Bill's financial planner, who managed the accounts in question, alleging the parties engaged in a scheme to avoid paying her alimony. Theresa, along with

some of Bill's other children, filed a motion to dismiss the action. The court denied the motion to dismiss, concluding the facts surrounding the allegations in the petition gave the court personal and subject matter jurisdiction, the resolution of the asserted claims did not need to occur as part of the estate proceeding in Nebraska because the court could order a constructive trust that could be administered in Iowa apart from the probate estate. And while unsure whether future alimony could be converted to a lump sum judgment, the equitable claims were viable and ripe for determination.

Thereafter, the financial planner, Rob E. Dickinson and R.E. Dickinson Investment Advisors, L.L.C. (Dickinson) filed a motion for summary judgment. Dickinson maintained there was no evidence that it acted in concert with Theresa and Bill to deprive Alice of her alimony. Dickinson maintained that while beneficiary change forms were provided at the request of Bill and/or Theresa and at the direction of Bill's attorney, no advice or direction as to the execution of those forms was provided. Further, Dickinson claimed it was not liable for fraud because no representations were ever made to Alice and no actions were taken to deceive her regarding the accounts. Finally, Dickinson claims that any actions taken to distribute the funds in the accounts to Bill's children pursuant to the beneficiary designation were done in good faith based on Bill's designation.

Alice resisted the motion for summary judgment, but the court granted the motion on May 16, 2013, finding:

> A thorough review of the evidence does not show anything that indicated Dickinson did some act intended to deprive Alice of her monthly alimony. . . . To keep Dickinson in this case simply because [Alice] believe[s] the Defendants used Dickinson as the

vehicle to accomplish their alleged nefarious scheme is inappropriate. This record contains nothing by which this Court can justify keeping Dickinson in the case.

Later, Theresa and Bill's other children also moved for summary judgment, but that motion was denied by the court. The court noted Alice's counsel acknowledged that the constructive trust was the main claim being made and that all other claims alleged in the petition were theories by which a constructive trust might be imposed.

The case proceeded to a bench trial on March 18, 2014. The court issued its decision March 25, dismissing with prejudice all defendants except Theresa. With respect to Bill's other children, the court stated:

> [A]ll other defendants were not active participants in the underlying course of events. These other defendants simply received a beneficiary check from the Schwab accounts. No viable cause of action has been presented against them. Therefore, with the exception of Theresa Lorenz, this cause of action is dismissed against them with prejudice.

As to Theresa, the court concluded Alice proved her claim of fraudulent transfer and ordered

> [a] constructive trust shall be formed with Defendant Theresa Lorenz personally responsible for said alimony obligation to the extent of all probate and nonprobate funds received by her from Bill. A judgment lien shall be imposed against all real and personal property of said Defendant to assure the corpus of said trust. Defendant shall execute and deliver said monthly alimony obligation to Plaintiff in a manner and form as she performed as executor.

Following the decision, Mark, along with the other dismissed siblings, filed a motion for sanctions against Alice and her attorney for alleged frivolous filings. The court rejected this motion.

Alice, Theresa, and Mark appeal the district court's decision.

## II. Scope and Standard of Review.

We review the district court's decision arising from a bench trial and arising from a motion for summary judgment for correction of errors at law. *Chrysler Fin. Co. v. Bergstrom*, 703 N.W.2d 415, 418 (Iowa 2005) (bench trial); *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (summary judgment). With respect to the district court's decision following the bench trial:

> The district court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence. Evidence is substantial if a reasonable person would accept it as adequate to reach a conclusion. Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding. In determining whether substantial evidence exists, we view the evidence in the light most favorable to the district court's judgment. If the district court's findings are ambiguous, they will be construed to uphold, not defeat, the judgment.

*Chysler Fin.*, 703 N.W.2d at 418–19 (internal citations and quotation marks omitted).

To the extent that the parties on appeal challenge the district court's discretionary actions such as admitting evidence from expert witnesses or deciding whether to impose sanctions, we review those claims for abuse of discretion. *See Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 531 (Iowa 1999) ("We are committed to a liberal rule on the admission of opinion testimony, and only in clear cases of abuse would the admission of such evidence be found

to be prejudicial."); *see also Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009) ("We review a district court's decision on whether to impose sanctions for an abuse of discretion."). Similarly, we review a district court's refusal to award punitive damages for an abuse of discretion. *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 395 (Iowa 2010).

While we normally review a district court's decision on a request for attorney fees for abuse of discretion, our review is de novo when the request for attorney fees is based on common law, rather than on a statute or a contract. *Fennelly v. A-1 Machine & Tool Co.*, 728 N.W.2d 163, 167 (Iowa 2006).

## III. Motion to Dismiss.

We first address the motion to dismiss Theresa and some of her siblings filed in response to Alice's lawsuit. The motion raised a number of issues which the district court rejected. On appeal, Theresa claims (1) the district court did not have subject matter jurisdiction over this case in light of the Nebraska probate action, (2) Alice's claim is barred by res judicata or issue preclusion, (3) the Nebraska one-year statute of limitations applies to bar Alice's claim, and (4) the matter was not ripe for consideration because Alice was still receiving alimony payments when the suit was filed.

**A. Subject Matter Jurisdiction.** Theresa claims the Nebraska probate court has original and exclusive subject matter jurisdiction of all matters relating to Bill's estate. Because Nebraska's probate court has subject matter jurisdiction, Theresa claims the Iowa courts do not.

Subject matter jurisdiction is "the authority of a court to hear and determine cases of the *general class* to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874–75 (Iowa 2007) (emphasis added). "A court may have subject matter jurisdiction but for one reason or another may not be able to entertain a particular case. In such a situation we say the court lacks authority to hear that particular case." *Id.* at 875.

There is no question here that Iowa courts have subject matter jurisdiction over actions brought by its citizens claiming a fraudulent transfer of funds executed within the borders of the state alleged to have been done in order to contravene an Iowa judgment. *See generally* Iowa Code ch. 684 (outlining the fraudulent transfer cause of action). We conclude Theresa is not actually challenging the Iowa court's subject matter jurisdiction but is instead challenging the court's authority to hear this particular case in light of the fact that Bill's estate is being probated in Nebraska. It is her contention the proper venue for Alice's claim is in the Nebraska probate action, not in the Iowa district court.

The funds in question passed outside of Bill's estate when he died as they were pay-on-death accounts. In this litigation in Iowa, Alice did not assert claims against Bill or his estate to recover the fraudulently transferred funds. Here, she only sued the recipients of those funds, making claims in equity and under the fraudulent transfer act. The fact Alice had other causes of action available to her

and other remedies in other jurisdictions[3] does not deprive the Iowa courts of the authority to decide the claims Alice brought against Bill's children. We therefore conclude the Iowa court had both subject matter jurisdiction and the authority to hear this particular case.

**B. Res Judicata.** Theresa next claims the district court should have granted her motion to dismiss based on res judicata. Theresa maintains that Alice's claims against Bill's children for the return of the funds in the investment accounts and her claim against Theresa for not halting the transfer of those funds or for failing to recover those funds is barred by the Nebraska probate court's decision. Theresa also claims on appeal that Alice's assertions that her alimony award was a lien on Bill's assets or somehow restricted Bill's estate planning are barred by the dissolution decree.

With respect to the Nebraska probate action, Theresa claims that Nebraska's law provides a remedy when transfers from pay-on-death

---

[3] *See* Nebraska Revised Statute section 30-2726 (Reissue 2008), which provides, in part:

> (a) If other assets of the estate are insufficient, a transfer resulting from a right of survivorship or POD designation under sections 30-2716 to 30-2733 is not effective against the estate of a deceased party to the extent needed to pay claims against the estate, statutory allowances to the surviving spouse and children, taxes, and expenses of administration.
> (b) A surviving party or beneficiary who receives payment from an account after death of a party is liable to account to the personal representative of the decedent for a proportionate share of the amount received to which the decedent, immediately before death, was beneficially entitled under section 30-2722, to the extent necessary to discharge the amounts described in subsection (a) of this section remaining unpaid after application of the decedent's estate. A proceeding to assert the liability for claims against the estate and statutory allowances may not be commenced unless the personal representative has received a written demand by the surviving spouse, a creditor, a child, or a person acting for a child of the decedent. The proceeding must be commenced within one year after death of the decedent.

designations leave a creditor of an estate unsatisfied. That remedy is for the creditor to bring a demand within the probate proceeding to have the pay-on-death assets brought back into the estate. *See* Neb. Rev. Stat. § 30-2726(a).

However, in this case, Alice did not file suit against Bill's estate or sue Theresa in her capacity as the estate's personal representative. In the Iowa litigation, she was not seeking to return the pay-on-death funds to the estate but seeking to establish a constructive trust whereby the fraudulently transferred funds would be made available to her to satisfy her alimony claim. She was also seeking attorney fees and punitive damages for the actions Theresa took in assisting her father in transferring these assets beyond the reach of Bill's estate. Because of the differences in the causes of action, we conclude the Nebraska probate case does not preclude Alice's Iowa lawsuit.

In an analogous case, our supreme court determined an action contesting a will and a separate tort action for the intentional interference with a bequest are two separate actions and are not required to be pursued at the same time in the same court. *See Huffey v. Lea*, 491 N.W.2d 518, 521 (Iowa 1992). The court in *Huffey* explained:

> Stated simply, in a will contest, the testator's intent or mental state is the key issue; in an intentional interference case, the wrongdoer's unlawful intent to prevent another from receiving an inheritance is the key issue. Because of the differences in proof, the actions are not the same nor will the same evidence necessarily support both actions.
>
> In addition, the recovery demanded in the will contest and in this action for intentional interference is not the same. In the will contest, the recovery demanded was the setting aside of the will procured by undue influence. In this action for intentional interference, the recovery demanded is for attorney fees, value of Huffey's time lost in his farm operation, and mental anguish

incurred in contesting the will. Obviously, the setting aside of the will did not provide Huffey with recovery of his consequential damages. Huffey also requested an award of punitive damages based on intentional and malicious conduct of defendants. An adequate remedy has not been provided by the mere setting aside of the will.

*Id.*

In this case the proof required to sustain an action in the Nebraska probate action under Nebraska Revised Statute section 30-2726(a) is different from the proof necessary to sustain a claim under Iowa's Uniform Fraudulent Transfer Act (UFTA). *See* Iowa Code § 684.12. The focus in the probate action would be on the validity of Alice's alimony claim against the estate and whether the assets in Bill's estate were sufficient to satisfy that claim, whereas the focus in the UFTA action was on whether fraud was committed in attempting to circumvent the dissolution decree by removing assets from Bill's estate. In addition, the recovery sought is different in the two actions. In the Iowa UFTA action, Alice can seek attorney fees and punitive damages unavailable to her in the Nebraska probate court.[4]

---

[4] We also note that the Court of Appeals of Nebraska has issued its appeal decision in Bill's probate action where it was determined that Alice is unable to recover the pay-on-death funds under Nebraska Revised Statute section 30-2726(a). The court in Nebraska concluded that despite receiving Alice's timely demand to recover those funds, Theresa, in her capacity as personal representative, failed to timely bring an action against the recipients of those funds, including herself, as required by section 30-2726(b), which provides:

A proceeding to assert the liability for claims against the estate and statutory allowances may not be commenced unless the personal representative has received a written demand by the surviving spouse, a creditor, a child, or a person acting for a child of the decedent. The proceeding must be commenced within one year after death of the decedent.

*See In re Estate of Lorenz*, 858 N.W.2d 230, 245–47 (Neb. Ct. App. 2014). The Court of Appeals of Nebraska did not address what the ramifications would be due to Theresa's

As to the Iowa dissolution proceeding, Bill and Theresa's actions to move assets out of Bill's estate had not yet occurred at the time of the dissolution proceeding. It is thus not possible to conclude that Alice is somehow precluded by that decision from bringing her current UFTA action. In fact, the dissolution court specifically provided that Alice could bring a subsequent action *in the event* Bill attempted to "dissipate, conceal, or dispose of assets in an effort to avoid his court ordered obligation." The dissolution proceeding therefore has no preclusive effects on the current lawsuit.

**C. Nebraska Statute of Limitations.** Theresa also maintains that Alice's claim should be barred by the one-year statute of limitations found in Nebraska Revised Statutes section 30-2726(b)—"The proceeding must be commenced within one year after death of the decedent." The Nebraska one-year statute of limitations does not prevent Alice from bringing this UFTA proceeding in Iowa district court. The statute of limitations applicable to Alice's claim here is found in Iowa Code section 684.9, and Theresa makes no claim that Alice is barred by this statute of limitations.

**D. Ripeness.** Finally, Theresa claims the district court erred in failing to dismiss Alice's claim for ripeness. Theresa maintains that at the time Alice brought this lawsuit, Bill's estate was still paying her monthly alimony support and were it not for Alice's "meritless litigiousness" in the probate proceeding, the estate would have still been paying her support. Theresa concludes that the

---

failure to bring the action as required by this code section because that issue was not before them. *Id.* at 247. However, the Nebraska Court of Appeals decision may not be the final resolution of these issues as the parties advised at oral argument that the Nebraska Supreme Court has now sustained Theresa's petition for further review.

estate ran out of money to pay Alice's claim because the estate was forced to defend Alice's lawsuits and the money was spent on lawyers rather than on her alimony.

"A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 578 (Iowa 2000). Until there was proof that Bill's estate was unable to meet its alimony obligation to Alice, Theresa asserts Alice did not have a ripe claim. However, under the UFTA, the insolvency of the debtor is only one factor to consider in proving whether a fraudulent transfer has occurred. *See* Iowa Code § 684.4(2) (detailing eleven factors that can be considered to determine whether a debtor had "actual intent" to hinder, delay or defraud any creditor). Thus, in order to maintain an action under the UFTA, Alice need not have waited until Bill's estate became insolvent in order to sue.

Even if we were to conclude that Bill's estate needed to cease making alimony payments to Alice before her claim became ripe, the estate had given Alice notice that the final alimony payment would be on February 1, 2013, and the matter proceeded to trial a year later in March 2014. Thus, even under Theresa's analysis, this case was ripe by the time it went to trial.[5]

We thus conclude the district court correctly denied Theresa's motion to dismiss Alice's claims.

---

[5] We will not conclude Alice's claim lacks ripeness because some of the estate's assets were spent on lawyers defending the claims Alice brought in the probate action. We will not fault Alice for bringing these claims against the estate.

**IV. Summary Judgment to Dickinson.**

Alice claims the district court improperly granted summary judgment to Dickinson for several reasons. First, Alice claims that the trial court viewed the facts in a light more favorable to Dickinson, granting inferences and conclusions in Dickinson's favor, rather than in her favor as required by applicable burden of proof. Next, Alice claims that in granting summary judgment for Dickinson the court wrongfully concluded that all of Dickinson's contentions would be adopted by a fact finder as a matter of law and that Alice's evidence would be disregarded. Alice also claims the court improperly focused on the fact Dickinson did not owe a duty to her but rather owed a duty to Bill. Finally, Alice asserts the court did not sufficiently address the factual issues involved.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). When the facts are undisputed and the only issue is the legal consequence of those facts, summary judgment may be entered. *Lubben v. Chi. Cent. & Pac. R.R. Co.*, 563 N.W.2d 596, 597 (Iowa 1997). In order for Alice to overcome a motion for summary judgement, she must come forth with specific facts demonstrating the existence of genuine issues for the trial. Iowa R. Civ. P. 1.981(5). Inferences drawn from the facts must be resolved in Alice's favor. *See Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984). An inference is legitimate if it is rational, reasonable, and otherwise permissible under the governing substantive law; an inference is not legitimate if it is based upon speculation or conjecture. *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001).

Summary judgement is not proper if reasonable minds could draw different inferences. *Knapp*, 345 N.W.2d at 121.

In her lawsuit, Alice claims Dickinson engaged in a civil conspiracy with Bill and Theresa to fraudulently transfer assets out of Bill's estate to avoid the alimony obligation and/or that Dickinson aided and abetted Bill and Theresa to do the same. Alice claims Dickinson knew his actions were wrongful. Alice also claims in her statement of disputed facts that Dickinson knew of Bill's mental disability and Theresa's power of attorney, and therefore Dickinson should not have let Bill sign the document to change his beneficiaries.[6]

Our court has relied on the Restatement (Second) of Torts section 876 to set the parameters of conspiracy and aiding and abetting. *See Wright v. Brooke Grp. Ltd.*, 652 N.W.2d 159, 171-74 (Iowa 2002). Conspiracy is an agreement of two or more persons acting together to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977) (citing *Stover v. Hindman*, 159 N.W.2d 422 (Iowa 1968)). The principal element of conspiracy is the agreement, involving mutual mental action and an intent to commit the act that results in injury. *Id.* Wrongful conduct forming the base of a civil conspiracy claim must be either an intentional tort or actionable in the absence of conspiracy. *Wright*, 652 N.W.2d at 174. Speculation, relationship, or association and companionship alone do not establish a conspiracy. *Ezzone v. Riccardi*, 525 N.W.2d 388, 398 (Iowa 1994).

---

[6] Alice does not seek to invalidate the beneficiary designation based on Bill's incapacity. Therefore, Dickinson's knowledge of the active power of attorney is not a material fact with respect to Dickinson's liability. *See Phillips*, 626 N.W.2d at 717 (noting summary judgment is appropriate where there is no genuine issue of *material* fact).

But, conspiracy is normally established by circumstantial evidence, and courts are liberal in allowing proof of circumstances to show whether a conspiracy exists.  *Stover*, 159 N.W.2d at 425.

Our court has again relied on the principles of the Restatement (Second) of Torts section 876(b) to set the parameters of aiding and abetting.  *See Heick v. Bacon*, 561 N.W.2d 45, 51 (Iowa 1997); *Ezzone*, 525 N.W.2d at 397-98; *Tubbs v. United Cent. Bank, N.A.*, 451 N.W.2d 177, 182 (Iowa 1990).  Aiding and abetting is when one person is subject to liability for harm caused by the tortious conduct of another because that person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.  Restatement (Second) of Torts § 876; *Tubbs*, 451 N.W.2d at 177.  Factors to consider in determining whether the defendant gave substantial assistance include: the nature of the act encouraged, the amount of assistance given, the presence or absence at the time of tort, the relation to the primary tortfeasor, and the defendant's state of mind.  Restatement (Second) of Torts § 876.  To be a "substantial factor in causing the resulting tort," it is required that the encouragement or assistance given to the alleged aider and abettor be a proximate cause of the tort causing injury.  *Heick*, 561 N.W.2d at 52.

The facts set out in the motion for summary judgment and in the resistance do not contain material differences.  Those facts show Dickinson provided forms to Bill which, when sent to Schwab and approved by Schwab, would allow Bill to change the beneficiaries on the accounts to his seven children.  After Bill's death, Dickinson mailed out the distribution election forms to

Bill's beneficiaries. While the facts also show that Dickinson was at least somewhat aware of the alimony obligation Bill owed to Alice, and that changing the beneficiaries to Bill's children would prevent the money in the Schwab accounts from being a part of Bill's estate to pay Alice's alimony, these facts alone are not enough.

To make a prima facie case of conspiracy, Alice would have to show that Dickinson and Theresa or Bill had made an agreement to defraud Alice and that Dickinson's facilitation of the beneficiary forms was, by itself, a tortious act to accomplish that goal. Even construing the facts in Alice's favor, as we must in a motion for summary judgment, there is no evidence to support Alice's claim beyond her mere allegations.

With respect to the aiding-and-abetting claim, Alice would have to show that Dickinson knew Bill and Theresa's actions in changing the beneficiaries constituted a breach of duty and that he gave "substantial assistance" to Theresa and Bill. Considering that all of the forms Dickinson provided to Bill were available online and through other means, Dickinson's involvement in providing the forms to Bill to sign does not to rise to the level of substantial assistance. Without evidence of other "substantial assistance," we agree with the district court that it was inappropriate to keep Dickinson in the case based solely on Alice's allegations that something nefarious occurred.

Alice claims the district court improperly interpreted the facts and inferences in a light more favorable to Dickinson. However, the district court did not say it was interpreting inferences in favor of Dickinson, but instead, the court

said it would have to engage in "rank speculation" in order to draw the inferences Alice asked the court to draw. Alice also claims in granting summary judgment, the district court disregarded her evidence. We disagree. The district court properly concluded there was no evidence that supported Alice's contentions.

Next, Alice asserts the district court improperly focused on the fact that Dickinson did not have a duty toward Alice, but toward Bill. On this issue, the district court stated that "[Dickinson] clearly does not have a personal obligation. That obligation belongs to William Lorenz and his Estate." Aiding and abetting does not require that one has a personal duty, but it does require one to know that the other's conduct constitutes a breach of their duty. *See* Restatement (Second) of Torts § 876(b). Dickinson testified he thought Bill's estate included other assets from which the alimony obligation would have been paid, and Alice did not offer any evidence that would indicate Dickinson was aware Bill and Theresa's action breached a duty.

Finally, Alice claims that the district court did not articulate the factual issues involved in violation of Iowa Rule of Civil Procedure 1.904(1). However, rule 1.904(1) requires a court, who tries an issue of fact without a jury, to specifically find the facts in writing. Alice's claims against Dickinson were not tried to the court but were resolved by summary judgment decision. Therefore, rule 1.904(1) is not applicable. No similar requirement is found in the rules governing summary judgment proceedings. *See* Iowa Rs. Civ. P. 1.981–.983. We find the district court acted properly in granting Dickinson summary judgement.

## V. Trial and Judgment.

Next we address claims made by Alice and Theresa that occurred either during trial or as part of the court's decision. Theresa asserts the court erred in admitting the expert testimony of Bruce Willey. She also challenges the court's factual findings on a number of grounds. Alice claims the court should not have dismissed Bill's other children from the lawsuit since they were the recipients of the fraudulently transferred funds. She also asserts Theresa should be liable for the total amount of funds that were fraudulently transferred, not just the funds Theresa received. Finally, she claims the court should have awarded her punitive damages and common law attorney fees.

**A. Expert Testimony.** First, Theresa asserts that the district court should not have admitted expert testimony from Bruce Willey. Willey testified as an expert for Alice and offered testimony that there was no other reasonable estate planning purpose to change the beneficiaries of the account other than to avoid paying Alice her alimony. He also criticized those involved in Bill's estate planning as there were no calculations done to determine the assets needed to satisfy Alice's alimony claim. Finally, as an attorney in the practice of estate planning, it was his opinion that all of Bill's assets should have come into the estate to be available to pay Alice's claim before Bill's children received any inheritance in order to be in compliance with the dissolution decree.

At trial, Theresa's attorney objected to Willey's testimony under Iowa Rules of Evidence 5.701 and 5.702 because his testimony went to the ultimate question of law that the court was to decide. The court permitted the testimony,

concluding the objection "really is to any weight that the court will give to this testimony."

Iowa Rule of Evidence 5.702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

"We are committed to a liberal rule on the admission of opinion testimony." *Leaf*, 590 N.W.2d at 531. There is no challenge that Willey was not an expert based on his knowledge or skill. Theresa faults the district court for admitting this testimony because she believes Willey opined on the ultimate legal conclusion and whether the facts satisfied the legal standard in this case. This, she claims, is improper. We note the case law she cites in support of her claim pertains to opinions offered by lay witnesses under rule 5.701,[7] not expert witnesses. *See State v. Cromer*, 765 N.W.2d 1, 10 (Iowa 2009).

In contrast, an expert can offer opinions that touch upon an ultimate fact in a case. *Grismore v. Consol. Prods. Co.*, 5 N.W.2d 646, 655 (Iowa 1942) ("[T]he fact that the matter inquired about is a vital and controlling fact in the trial, or is even the ultimate fact, which the jury are to pass upon and determine, is no reason why the opinion should not be received."). We therefore conclude the

---

[7] Iowa Rule of Evidence 5.701 provides:
If the witness is *not* testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
(Emphasis added.)

court did not abuse its discretion in admitting Willey's testimony and giving that testimony whatever weight the court determined, as the fact finder, it should have. However, even if we were to conclude that Willey's testimony crossed the line and should not have been admissible, the court did not reference Willey's testimony at all in its decision. Thus, it clearly gave Willey's opinion little, if any, weight, and Theresa cannot prove she was prejudiced by its admission. *See Mohammed v. Otoadese*, 738 N.W.2d 628, 633 (Iowa 2007) (noting "the erroneous admission of evidence does not require reversal 'unless a substantial right of the party is affected'" (citation omitted)).

**B. Dismissal of Bill's Children Other than Theresa.** Next, Alice claims the court should not have dismissed Bill's other children from the action because, as recipients of fraudulently transferred funds, they must return the funds received irrespective of their knowledge or complicity in the fraud. In support of her claim, Alice cites the UFTA in Iowa Code chapter 684.[8]

A transfer is fraudulent under the UFTA when a debtor, among other things, makes a transfer or incurs an obligation if the debtor did so "with actual intent to hinder, delay, or defraud any creditor of the debtor." Iowa Code § 684.4(1)(a). If the claim is proved, a creditor may obtain any of the following remedies:

---

[8] She also bases her claims against the other children on Iowa Code section 630.16 and unjust enrichment. In addition, Alice claims the other children's failure to appear for trial after being directed to personally appear by the court should result in a default judgment against them. Because we conclude Bill's other children are liable to Alice under the UFTA to the extent of their receipt of fraudulently transferred funds, we need not reach these alternative claims made by Alice.

　　a. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

　　b. A remedy by any special action available under this subtitle, including attachment or other provisional remedy, against the asset transferred or other property of the transferee.

　　c. Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, any of the following:

　　(1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.

　　(2) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.

　　(3) Any other relief the circumstances may require.

*Id.* § 684.7.　The creditor must prove the fraudulent transfer by clear and convincing evidence.　*Benson v. Richardson*, 537 N.W.2d 748, 756 (Iowa 1995).

The district court concluded that Alice had proved all elements of her claim for fraudulent transfer by the required burden.　However, it also found that no viable cause of action had been presented against Bill's other children, dismissing them from the case.　As the court determined the transfer by Bill and Theresa, as Bill's power of attorney, was fraudulent under the UFTA, Alice is able to avoid the transfer to the extent necessary to satisfy her lifetime alimony claim. As such, the recipients of the funds that were fraudulently transferred, under section 684.7, are responsible to Alice to the extent that the funds are needed to satisfy her claim.　*See* Iowa Code § 684.8(2) ("[T]he creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claims, whichever is less.　The judgment may be entered against either of the following: (a) The first transferee of the asset or the person for whose benefit the transfer was made.")

The other children assert they should not be responsible because they had no knowledge of the conduct of Bill or Theresa and were unaware they were beneficiaries of the accounts until Bill's death. Under the UFTA, a transfer will not be considered voidable if a first transferee took in good faith and for a reasonably equivalent value. *See id.* § 684.8(1). Bill's other children did not appear for trial or offer any evidence. While there is no evidence to prove they acted to defraud Alice, their good faith acceptance of the transfer only insulates them from liability under the UFTA if they gave Bill something of reasonably equivalent value in exchange for the transfer. *See id.* There is simply no evidence to support a finding to that effect.

We therefore conclude the district court erred in dismissing Bill's other children, specifically Kristin Ostrander, Mark Lorenz, Valerie Bisanz, Thomas Lorenz, and Heidi Lorenz,[9] as they are responsible to pay Alice, as Bill's creditor, the amount necessary to satisfy her claim to the extent of their receipt of the fraudulently transferred funds. This case should be remanded to the district court to enter a judgment in favor of Alice against each of the listed Lorenz children in the amount of the funds each child received from Bill's Schwab accounts.

**C. Claims Between Theresa and Alice.** The district court concluded the Alice proved the elements of civil conspiracy and aiding and abetting against Theresa. The court also concluded Alice proved she was damaged by Theresa's action and that a fraudulent transferred occurred. Theresa challenges the district

---

[9] The Estate of Matthew Lorenz and Debbie Lorenz were dismissed from the case by Alice before trial in this case. Therefore, any judgment entered did not affect their interest in the funds received from Bill upon his death.

court's decision by asserting a number of the court's factual findings are unsupported. Specifically she asserts the record does not support the findings (1) that Bill or Theresa made a fraudulent transfer or acted to frustrate the dissolution decree, (2) that the beneficiary changes frustrated the dissolution decree and that Theresa knew the changes were improper, (3) that there was a conflict in the record as to who—Bill or Theresa—made the beneficiary change, (4) that Theresa concealed assets, (5) that Bill and Theresa were one person after Theresa became Bill's attorney-in-fact and that she can be personally liable for following Bill's directives, and (6) that Theresa was a co-conspirator or acted in concert to commit a wrong against Alice when Theresa only complied with Bill's directives and the advice of Bill's attorney.

Alice defends these factual findings, and further asserts the court should have ordered Theresa to be responsible for the entire amount of the funds that were fraudulently transferred to Bill's children in light of her role as Bill's power of attorney when the transfer was made. Because Theresa's actions amounted to an intentional tort, Alice claims this makes her jointly and severally liable for the entire amount.

Findings of fact in a jury-waived case have the effect of a special verdict and are the equivalent of a jury verdict. *McCune v. Muenich*, 124 N.W.2d 130, 131 (Iowa 1963). The court's judgment on appeal will not be disturbed if it is supported by substantial evidence. *Id.* "Evidence is substantial or sufficient when a reasonable mind would accept it as adequate to reach the same findings." *Connolly v. Bain*, 484 N.W.2d 207, 210 (Iowa 1993). We will not weigh

the evidence or the credibility of witnesses. *McCune*, 124 N.W.2d at 131. The evidence will be construed in the light most favorable to the verdict. *Id.*

1. *Fraudulent Transfer Occurred.* Theresa maintains that when Bill signed the beneficiary change forms in 2007 no transfer actually occurred. He remained the owner of the accounts until his death, the beneficiaries did not obtain any interest in the accounts during Bill's lifetime, and no funds were removed from Bill's assets at that time. Theresa further contends that at Bill's death, he did not make a transfer because he no longer owned the accounts but the account holder, Schwab, made the actual transfer upon Bill's death. Theresa goes on to assert that even if a transfer occurred in 2007 or at Bill's death, the evidence does not support the conclusion that the transfer was done to defraud Alice because the transfer was made based on the advice of Bill's dissolution attorney.

A transfer is defined under the UFTA as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Iowa Code § 684.1(11). A transfer is made, according to the statutory provisions, "when it becomes effective between the debtor and the transferee." *Id.* § 684.6(3). We conclude this broad definition includes the act of designating a beneficiary on a pay-on-death account as it is a direct mode of disposing of a conditional future interest in the asset. The fact that the beneficiary designation could have been changed during Bill's lifetime or that the account could have been liquidated before Bill's death makes

the transfer conditional, but nonetheless it still is a transfer under this statutory definition. The transfer became effective when Bill made the designation.

With respect to the evidence that the designation was made with an actual intent to hinder, delay, or defraud, it appears Theresa claims that the transfer cannot be found to be fraudulent because it was made based on the advice of Bill's dissolution attorney. That attorney testified that in her opinion the dissolution decree did not restrict Bill's estate planning because the decree awarded him ownership of the accounts in question. In her opinion, the dissolution court did not put any specific duties on Bill to maintain certain assets or a certain amount of money to pay Alice her alimony claim upon his death. The attorney considered the changing of the beneficiary designation to be maintaining the status quo as Bill had previously designated his children as the beneficiaries of these accounts before the dissolution proceeding and she had alerted Alice's counsel that the beneficiary designation would be changed back when the dissolution decree was entered. She considered the plan to be reasonable and in compliance with the dissolution decree.

Further, she expected Alice's counsel to bring an enforcement action if Alice disagreed with her interpretation of the dissolution decree language, and Bill's counsel felt comfortable having to justify the action to the court if it ever became subject to the court's review. According to counsel, she did not consider the estate planning decision to be secretive and fully expected Alice and her counsel to be aware of the beneficiary change.

It is unclear how Alice or her counsel would have been aware of the beneficiary change as there was no reporting requirement in the dissolution decree and the account was not public record. Bill's counsel did send Alice's attorney a letter during the dissolution proceeding indicating the beneficiary designation change had been made to bring the account into compliance with the prenuptial agreement. The letter went on to say that in her opinion the prenuptial agreement would be no longer binding when the decree was issued. However, counsel never specifically informed Alice or her attorney that Bill planned to change the beneficiary designation back to his children when the dissolution decree was entered. Apparently, Bill's counsel expected Alice's attorney to read between the lines of the letter in order to realize that the beneficiary designation would likely be changed following the dissolution decree. Alice and her attorney were apparently supposed to know this would occur despite the dissolution court's later direction in a posttrial order that Alice could seek court intervention should Bill "dissipate, conceal, or dispose of assets in an effort to avoid his court ordered obligation."

It is now clear that neither Alice nor her attorney knew of the beneficiary change until after Bill's death. Theresa, as personal representative of Bill's estate, failed to identify the accounts in the probate inventory. While the accounts passed outside of the estate, such that they did not need to be identified in the probate inventory, failing to disclose their existence in the

probate inventory further kept Alice in the dark as to their existence and Bill's beneficiary change.[10]

In finding factual support for the intent to defraud element, the district court noted that the issue of lifetime alimony was a hotly contested issue during the dissolution proceedings and that Bill, Theresa, and Bill's attorney remained frustrated by the lifetime alimony award. Following the dissolution, a "common plan" was concocted between Bill, Theresa, and Bill's attorney to keep certain assets from becoming part of Bill's estate. While Bill's counsel thought the plan was "reasonable," she knew the effect was to remove the assets from the reach of Alice's alimony award, and she acknowledged in retrospect that the funds remaining in the estate were inadequate to pay Alice's claim. Both Bill's counsel and Theresa assert Bill made the ultimate decision to change the beneficiary designation, but at the time the designation was made, Bill's physician had determined that he was incapable of conducting and managing his business affairs. Clearly, both Bill's counsel and Theresa provided assistance and guidance to Bill in deciding the beneficiary change should be made and provided assistance in executing that change.

We conclude substantial evidence supports the district court's conclusion that the transfer here was made with the actual intent to hinder, delay, or defraud

---

[10] The Nebraska Court of Appeals noted the problem with the current Nebraska statutory language, in cases such as these, where a creditor may not know of the existence of nonprobate transfers in order to request the personal representative take action to retrieve those transfers in order to satisfy a creditor's claims. *See Lorenz*, 858 N.W.2d at 247–48. The court also noted that the personal representative may have a conflict of interest in keeping this information quiet and not taking action in a timely manner when that person is also a nonprobate transfer beneficiary. *Id.* This decision of the Nebraska Court of Appeals is currently pending in the Nebraska Supreme Court on further review.

Alice. *See id.* § 684.4(1) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . (a.) With actual intent to hinder, delay, or defraud any creditor of the debtor.").

*2. Frustration of the Dissolution Decree.* Next, Theresa claims the court erred in finding the beneficiary change resulted in a total frustration of the dissolution decree. She again asserts the beneficiary change was not a "transfer" within the meaning of the statute. We again reject this assertion for the reasons stated above. She also claims there is no support for the conclusion that she knew the beneficiary change was improper since she relied on the advice from Bill's attorney.

The district court made specific credibility findings against Theresa noting that her testimony placed her truth and veracity in question. The court found her testimony regarding her lack of knowledge that the plans were designed to frustrate the alimony obligation not believable. We give deference to the district court's credibility findings. *See McCune*, 124 N.W.2d at 131 ("[W]e will not weigh the evidence or the credibility of the witnesses."). We conclude the evidence supports the court's factual finding that Theresa knew the beneficiary change resulted in the frustration of the decree.

*3. Who Made the Beneficiary Change.* Theresa claims the court erred in making a finding that the record conflicts as to who made the decision to change the beneficiary designation. Theresa asserts the record undisputedly shows that Bill made the decision and that she was not in any way involved in the process.

In stating that the record conflicted as to who made the decision to make the beneficiary change, the district court was pointing out that while Bill signed the forms, a physician had previously determined he was unable to handle his normal business affairs. Theresa asserts that any such finding calling into question Bill's mental capability was unnecessary here because Alice never attempted to invalidate the beneficiary designation by claiming Bill lacked the mental capacity to execute the beneficiary designation. In addition, Theresa maintains that both she and Bill's attorney testified Bill had the mental capacity to make the change and understood his decision.

While is it correct that there was no claim seeking to invalidate the beneficiary designation based on Bill's incapacity, Alice did assert claims of conspiracy and aiding and abetting thereby making Bill's mental capacity and the "assistance" offered by Theresa and Bill's attorney a valid factual inquiry. We find no error in the court's factual finding on this issue.

Restatement (Second) of Torts section 876, entitled, "Persons Acting in Concert," provides:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

This restatement section has been held to specifically provide for joint and several liability when someone gives substantial encouragement or assistance to

another's tortious conduct.  *Reilly v. Anderson*, 727 N.W.2d 102, 107 (Iowa 2006).

Alice asserts that the record makes it clear that Theresa acted in concert to aid and abet Bill to fraudulently transfer assets in order to prevent Alice from receiving her alimony after Bill's death.  Because Theresa held Bill's general power of attorney, the district court considered them to be one in the same.  Theresa claims this was an improper finding as she acted only to carry out her father's instructions and followed the direction of Bill's attorney in the dissolution proceeding.

Through the exercise of her power of attorney during the dissolution proceeding, Theresa located and accounted for all of Bill's assets.  The dissolution decree provided that Alice's alimony claim would be a lien against Bill's estate, assuming Bill predeceased Alice.  Theresa understood that this meant before any of the children could inherit from Bill's estate, Alice's support would have to be paid.  Theresa was aware her father was unhappy with the alimony award.  Theresa participated in a meeting with Bill's dissolution attorney to discuss ways to fund the alimony obligation.  There, the decision was made to change the beneficiary designations on the investment accounts back to Bill's children rather than the trust created in Bill's will.

Theresa claimed at trial that she did not know why the beneficiary change was made except that this is what her father wanted to do.  In fact, Theresa maintained that while she understood the money in the accounts would now go to Bill's children upon his death, she testified she did not understand the

difference between estate and nonestate assets and she did not understand that changing the beneficiary designation took these accounts out of the estate. Unlike the previous beneficiary change, Theresa did not sign the form as her father's power of attorney.[11] The district court took this as evidence that Theresa knew the change was not proper.

The court concluded Theresa conspired with and provided substantial assistance to Bill to transfer substantial assets out of his estate and to his children, and the net result was that Bill's estate was reduced by approximately $380,000.[12] We find substantial evidence supports the district court's decision and also conclude by virtue of these findings, Theresa should be liable for the full amount of the fraudulently transferred funds, not just the funds she received from her father, as a joint tortfeasor for providing substantial assistance to Bill knowing the transfer of these funds breached Bill's support obligation.

*4. Concealing of Assets.* Next, Theresa asks that we "reverse the trial court's finding that [she] concealed assets." She points out that she was not obligated as the personal representative of her father's estate to list the accounts in question on the probate inventory as they passed outside of the estate upon Bill's death.

The district court found that Theresa's testimony lacked credibility:

> Theresa's acts of concealing assets and her testimony place her truth and veracity at question. Ron Dickinson testified that he

---

[11] This made sense in light of the fact the power of attorney prevented Theresa from making gifts to herself from Bill's property because Theresa was included among the new beneficiaries of the investment accounts.

[12] With an alimony obligation of $2000 per month, the assets diverted out of the estate would have provided over fifteen years of support for Alice.

advised Theresa that some of the Schwab monies may have to be returned and placed in the estate. In the Nebraska probate proceedings, the inventory was silent as to the Schwab accounts even though they were an asset at the time of Bill's death. She may have made a false assertion in the probate proceedings.[13] Theresa in executing an affidavit of domicile for Schwab made a misleading or false assertion. She made an affirmation that all debts of the decedent as well as claims against the estate were provided for or paid. This court does not find Theresa's testimony believable as to her lack of knowledge of the plans designed to frustrate the alimony obligation.

The act of concealing assets was one of the many factors that went into the court's determination that Theresa lacked credibility. We give deference to the district court's credibility findings. *See id.* The court was clear that in addition to not telling Alice of the existence of these funds, whether or not Theresa had a duty to disclose, Theresa also made other false and misleading statements in the probate court relating to the payment of Alice's alimony claim. These findings support the court's credibility determination as well as its conclusion that Theresa concealed assets.

*5. Power of Attorney and Co-conspirator—Personal Liability.* Next, Theresa claims the court erred in concluding that she and her father became one person by virtue of the power of attorney and erred in finding that she, as Bill's attorney-in-fact, can be personally liable for executing Bill's directives. Theresa claims there is no basis in law to reverse vicarious liability making agents responsible for the direction of the principals.

---

[13] In the Nebraska probate action, Theresa, as personal representative for Bill's estate, filed an answer to Alice's petition for allowance of claims in which Theresa stated Alice's statements of claim were improper and properly denied and that Bill's will had made adequate provision for future alimony by the establishment of "William F. Lorenz Alimony Trust." No such trust had been established.

As we have discussed, Theresa's actions, as Bill's power of attorney, provided substantial encouragement and assistance to Bill in transferring funds out of Bill's estate in order to thwart the alimony award. The principles of agency will not protect an agent who commits a tort in the course of the agency relationship. *See* Restatement (Third) of Agency §§ 7.01 ("An agent is subject to liability to a third party harmed by the agent's tortious conduct."); 8.09 cmt c. ("[A]n agent has no duty to comply with a directive to commit a crime or an act the agent has reason to know will be tortious.").

The district court concluded that the plan to remove the assets in the investment accounts from Bill's estate was a "common plan" between Bill, Theresa, and Bill's attorney devised to isolate Bill's assets from his estate to ensure Bill's children received the money, thwarting the alimony award. Theresa communicated with the financial planner about the changes that would be made and escorted Bill to the financial planner's office. She then, after Bill's death, worked with the financial planner's office to effectuate the transfer of the funds to herself and her siblings and failed to take action as personal representative to collect those funds after Alice demanded, as a creditor, the estate recover those nonprobate funds under the Nebraska statutes. *See Lorenz*, 858 N.W.2d at 246–47. We find no error in the court's conclusion that Theresa was a co-conspirator and acted in concert with Bill to hinder, delay, or defraud Alice's ability to collect on the alimony order. Theresa's actions amounted to an intentional tort, so her status of Bill's agent in this case will not protect her from personal liability.

**D. Punitive Damages.** Alice also claims that the court erred in failing to address her claim for punitive damages against Theresa. Alice notes that the court did make the necessary findings to justify an award of punitive damages. Alice asserts Theresa planned and participated in a scheme to transfer hundreds of thousands of dollars to avoid paying the alimony judgment. Alice claims this conduct is even more egregious considering Theresa was acting at a time when Bill's doctor had determined he was incapable of conducting or managing his own business affairs. She asks that we send a strong message and enter a punitive damage award here.

Punitive damages "exist to punish the defendant and to deter the offending party and like-minded individuals from committing similar acts." *Ryan v. Arneson*, 422 N.W.2d 491, 496 (Iowa 1988). While "[f]raud is one of the recognized grounds for exemplary damages," "not every fraud case permits an exemplary damage award." *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 213-14 (Iowa 1980). There needs to be aggravating circumstances to justify an award of punitive damages. *Id.* at 214. Under Iowa Code section 668A.1(1)(a), in order to be awarded punitive damages, a party must show "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another."

> Willful and wanton conduct is shown when an "actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences."

*Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (citation omitted).

The award of punitive damages is discretionary, and it is never awarded as a matter of right. *Brokaw*, 788 N.W.2d at 395. It was within the district court's discretion to award punitive damages, if it felt the award was deserved. *Id.*; *see also Peters Corp. v. N.M. Banquest Investors Corp.*, 188 P.3d 1185, 1197 (N.M. 2008) ("We review a trial court's decision not to award punitive damages for abuse of discretion, and we will only reverse that decision if it is 'contrary to logic and reason.'" (citations omitted)).

While it did not specifically articulate its reasons in the initial decision, the court clearly decided punitive damages were not called for in this case when it denied Alice's posttrial motion. While some of the court's factual findings in this case could support an award of punitive damages, we cannot conclude that the court's failure to make such an award was an abuse of discretion or was contrary to logic or reason. We therefore affirm the court's denial of punitive damages in this case.

**E. Attorney Fees.** Finally, Alice asserts the court should have awarded her common law attorney fees. Our review of the district court's decision to deny the request is de novo. *Fennelly*, 728 N.W.2d at 167. For attorney fees to be awarded when there is no statute or contract providing for such an award, the conduct of the losing party must "exceed[ ] the punitive-damage standard, which requires 'willful and wanton disregard for the rights of another.'" *Id.* at 181 (citations omitted). The conduct "'must rise to the level of oppression or

connivance to harass or injure another.' Put another way, the standard 'envisions conduct that is intentional and likely to be aggravated by cruel and tyrannical motives.'" *Id.* (citation omitted). Upon our de novo review, we agree such an award in this case is not warranted and affirm the district court's decision on this ground.

## VI. Remedy—Constructive Trust.

Next, Theresa challenges the court's decision to impose a constructive trust to ensure Alice's alimony is paid. She also claims it was error for the court to require her to pay into that trust all probate and nonprobate funds she received from Bill. Theresa claims that Iowa Code section 630.16 is inapplicable to establish a constructive trust in this case, and we agree.[14] But that code section is not the only way to establish a constructive trust in Iowa.

> A constructive trust is a remedy, applied for purposes of restitution, to prevent unjust enrichment. It is an equitable doctrine. In *Loschen v. Clark*, 127 N.W.2d 600, 603 (Iowa 1964), we approved the following definition:
>> A constructive trust is a creature of equity, defined . . . as a remedial device by which the holder of legal title is held to be a trustee for the benefit of another who in good conscience is entitled to the beneficial interest. So, the doctrine of constructive trust is an instrument of equity for the maintenance of

---

[14] Iowa Code section 630.16 provides:
> At any time after the rendition of a judgment, an action by equitable proceedings may be brought to subject any property, money, rights, credits, or interest therein belonging to the defendant to the satisfaction of such judgment. In such action, persons indebted to the judgment debtor, or holding any property or money in which such debtor has any interest, or the evidences of securities for the same, may be made defendants.

The judgment debtor of the dissolution proceeding in this case is Bill, who is deceased. The property Alice attempts to recover is not property of Bill's estate, but the property that automatically passed to his children at his death. Thus, this code section does not provide the relief Alice seeks.

justice, good faith, and good conscience, resting on a sound public policy requiring that the law should not become the instrument of designing persons to be used for the purpose of fraud.

. . . .

Constructive trusts fall into three categories: (1) those arising from actual fraud; (2) those arising from constructive fraud (appropriation of property by fiduciaries or others in confidential relationships); and (3) those based on equitable principles other than fraud. One seeking the remedy must establish the right by clear, convincing, and satisfactory evidence.

The distinguishing feature of the constructive trust is that it arises by construction of the court and ordinarily the result is reached regardless of and contrary to any intention to create a trust.

*Slocum v. Hammond*, 346 N.W.2d 485, 493 (Iowa 1984) (internal citations omitted).

In addition, under Iowa Code section 684.7(1)(c)(3), a creditor, who has established a fraudulent transfer, has the following remedies:

a. Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

b. A remedy by any special action available under this subtitle, including attachment or other provisional remedy, against the asset transferred or other property of the transferee.

c. Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, any of the following:

(1) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property.

(2) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee.

(3) Any other relief the circumstances may require.

If the creditor has a judgment against the debtor, the creditor "may levy execution on the asset transferred or its proceeds." Iowa Code § 684.7(2). Under these provisions, we conclude the court was well within its rights to grant Alice the remedy she sought—the establishment of a constructive trust.

With respect to the scope of the trust, the evidence at trial established that Bill gave gifts and other property to his children after the dissolution decree and up to the time of his death including Christmas gifts, forgiveness of loans, and gifts of other personal property. However, there was no testimony or findings of the district court that these actions were taken by Bill with the actual intent to hinder, delay, or defraud Alice's collection of her alimony decree. *See* Iowa Code § 684.4(1)(a). Thus, the scope of the constructive trust should be limited to the money the children received from the Schwab investment accounts.

## VII. Mark's Claims.

In the sole claim on appeal we address, Mark asserts the court abused its discretion in denying his motion for sanctions against Alice. He claims the court should have granted his motion for sanctions against Alice for pursuing what he claims was a "frivolous" lawsuit. As we have already concluded there is merit to Alice's claims and affirm the judgment entered in her favor with a few modifications, we find no abuse of discretion in the district court's denial of Mark's request for sanctions.

## VIII. Conclusion.

In conclusion, we determine the court properly denied the pretrial motion to dismiss filed by Theresa and some of her siblings and properly granted Dickinson's summary judgment motion. The court's findings of fact are supported by the evidence, but we reverse the district court's dismissal of claims against Bill's other children because they are responsible to Alice to the extent that they received funds from the Schwab accounts. We also conclude the court

erred in failing to order Theresa to be jointly and severally liable for the total amount of the fraudulently transferred funds from Bill's Schwab accounts. We remand this matter to the district court to enter an order for the establishment of a constructive trust to include all of the funds Bill's children specified herein received from the Schwab accounts upon Bill's death. Each child shall be responsible up to the amount they received from these accounts, except the Estate of Matthew Lorenz and Debbie Lorenz who were dismissed by Alice prior to trial. Theresa shall be jointly and severally liable for the full amount of the fraudulently transferred funds from the Schwab accounts. Finally, we affirm the district court's refusal to award punitive damages and attorney fees in this case and its denial of sanctions against Alice.

Costs on appeal are assessed one-third to each of the following: Alice Shea, Theresa Lorenz, and Mark Lorenz.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**